106 So.2d 207 (1958)
STATE of Florida ex rel. William D. BARFIELD, Appellant,
v.
FLORIDA YACHT CLUB, a Florida corporation, Appellee.
No. A-366.
District Court of Appeal of Florida. First District.
October 28, 1958.
Rehearing Denied November 18, 1958.
*208 Rhydon C. Latham, William D. Barfield, Jacksonville, in pro. per., for appellant.
Bedell & Bedell, Jacksonville, for appellee.
RIEGLE, HORACE D., Associate Judge.
The parties will be referred to as they appear in the Circuit Court.
In this case, upon petition therefor, an Alternative Writ of Mandamus was issued requiring the Florida Yacht Club, a Florida corporation, respondent, to re-instate the relator, William D. Barfield, to membership in said Club or show cause for its refusal so to do.
Motion to Quash the Alternative Writ of Mandamus was filed by the respondent Club, and, upon hearing, was granted. Appeal was improvidently taken to the Supreme Court of the State of Florida, which Court transferred the cause to the District Court of Appeal, First District, for consideration and determination.
Previous to the mandamus suit the relator had been a member of the respondent Club. The club owns extensive real property in Duval County, Florida, a large club house, swimming pools, tennis courts, wharves, docks, etc. The Club leases its facilities to non-member persons and organizations for use by such lessees for entertainment and the club serves food and other refreshments, and provides personnel for the enjoyment of its premises to the guests of such lessees.
The relator, while attending a function of a lessee, on January 20, 1951, was injured. In January 1955 the relator instituted a suit for damages, for the personal injuries sustained, in the amount of $50,000. In February 1956 the ad damnum clause of the relator's complaint was amended to $100,000. Upon trial the relator secured a judgment for $10,000.
On June 25, 1956, the relator received a registered lettter from the Board of Governors of the Club that charges had been brought against him for conduct detrimental to the best interests of the Florida Yacht Club in maintaining an action for damages against the Club in excess of the insurance coverage. Notice was given the relator of a hearing before the Board of Governors of the Club on the charges. A hearing was had at which relator was present and represented himself. Upon the hearing being had the relator was expelled by action of the Board of Governors. The relator demanded re-instatement, which was refused, and this mandamus suit followed.
Learned counsel for both parties have each submitted exhaustive briefs on the questions involved and this Court is indebted to them for this service.
The relator contends that, by his expulsion, he was deprived of his property without due process of law.
The respondent is a private social club, incorporated under the provisions of Section 617.10, Florida Statutes, F.S.A., the first two sub-sections of which are pertinent to this matter and are as follows:

*209 "617.10 Incorporation of social clubs or societies. Social clubs or societies not for profit may be incorporated under this chapter; provided, however, that any such club or society, in its by-laws:
"(1) Delegate to its board of directors full discretionary power of admitting or expelling members;
"(2) Prescribe that an incorporator or member shall not have any vested right, interest or privilege of, in or to the assets, functions, affairs or franchises of the corporation, or any right, interest or privilege which may be transferable or inheritable, or which shall continue after his membership ceases, or while he is not in good standing; provided, that before his membership shall cease against his consent he shall be given an opportunity to be heard, unless he is absent from the county where the corporation is located; and, * * *"
The respondent Club adopted By-Laws pursuant to the authority of said Section, the parts pertinent to this controversy are as follows:
"Article XIV. Section 4: Any member, whether Resident or otherwise, may be expelled either by the Club or Board of Governors by a two-thirds vote of the members present at the regular or any special meeting, for any conduct on his part likely to endanger the welfare, interest or character of the Club. Before such action is taken, the accused shall have five days' notice of the charges made against him, and an opportunity to be heard in his own defense."
"Article XIV. Section 5: All interest in the Club or its property of any one resigning, expelled or otherwise ceasing to be a member shall be vested in the Club."
In the case of Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729, 731, a High School had been suspended from an Athletic Association. The Supreme Court of the State of Florida said "* * * we find no showing of a contractual or property right that would authorize the courts to interfere. It was purely an internal affair of the association and there is no showing of mistake, fraud, collusion or arbitrariness in the proceedings."
There is no claim here that Section 617.10 nor the club's by-laws are unconstitutional. There is no claim here that any notice or procedural requirements were defective or omitted. There is no claim that the Board of Governors was not the proper board to take action on expulsions.
The relator, by becoming a member of the Club, agreed to and became bound by Section 617.10, supra, and the Club's by-laws adopted pursuant thereto, and any property rights were subject to the provisions that "a member shall not have vested right * * * in or to the assets * * * after his membership ceases."
We hold that the procedural requirements of the By-Laws of the Club and statute referred to, having been met, the relator was not deprived of his property without due process of law.
The relator contends that the sufficiency of the cause for expulsion, by the appellee's Board of Governors, to whom full discretionary power of expelling has been committed, pursuant to Section 617.10, supra, should be reviewed by the courts.
There is a valid distinction between those institutions such as trade unions, professional associations or trading exchanges and like organizations, affecting a person's right to earn a living on one hand, and private social clubs on the other. Certain conduct, which might not justify expulsion from some other type of association, where membership is a condition to earning a livelihood, or essential to the enjoyment of a contract or property right, may justify expulsion from a private social club.
*210 The principles announced in the cases in which the courts have intervened to protect a person from unreasonable expulsion from a trade union or professional society or organization do not and should not control with respect to a private social club.
The primary, if not the only, interest and purpose of a private social club is to afford pleasant, friendly and congenial social relationship and association between the members.
In the decision, Hopkinson v. Marquis of Exeter (1867) L.R. 5 Eq.Cases 63, it was held that whether the member's conduct was such as likely to endanger the welfare and good order of the club was for decision by the club members and that their decision was final if arrived at bona fide.
In Dawkins v. Antrobus (1879) L.R. 17 Ch.Div. 615, it was held that the courts could not consider a decision of expulsion in the absence of a showing of fraud or bad faith.
In the case of Commonwealth ex rel. Burt v. Union League, 1890, 135 Pa. 301, 19 A. 1030, 1035, 8 L.R.A. 195, the Court held:
"What is orderly, and what is disorderly, conduct, injurious to the interests and hostile to the objects of the league, must necessarily be determined by some proper tribunal; and the board of directors, to whom the practical management of its affairs is given, constitutes, in the first instance the tribunal which the members have themselves set up, to have and exercise jurisdiction over such offenses. When Mr. Burt became a member of the league, he voluntarily submitted himself to this jurisdiction. He was admitted upon the terms of the charter, with knowledge that he must submit to all such regulations as the by-laws might reasonably provide, and that, for any willful violation or infraction thereof, he was liable to be disfranchised.
"The offense of which he was convicted, it is true, was a minor offense; not such as would have justified his expulsion at the common law, but such as justified the league, acting in good faith, in the exercise of the powers conferred by the charter, in imposing that sentence * * *".
To the same effect is the case of United States ex rel. De Yturbide v. Metropolitan Club, 11 App.D.C. 180.
In the case of La Gorce Country Club v. Cerami, Fla., 74 So.2d 95, 96, the Court, while holding that a member was entitled to notice and an opportunity to be heard, approved the ruling of the Circuit Court excluding all evidence with respect to the merits of the expulsion, holding "* * * the trial court properly decided at every juncture that it was not concerned with the merits, which were and are within the exclusive jurisdiction of the respondent's governing body." (Italics supplied.) After referring to the authorities cited in 20 A.L.R.2d 344, the Court said:
"From the authorities before us, it appears to be the majority, and we think the better-reasoned, view, that if expulsion of a club member is accomplished without notice and hearing, the denial of these minimum procedural safeguards is violative of the `principles of natural justice' and judicial intervention is indicated."
On page 99 of the opinion the Court further said:
"To accept this ingenious argument would result in usurpation of the prerogatives which the club, under its by-laws and in accord with statute, has delegated to its own governing body. And since this body is the final arbiter of the sufficiency of causes for expulsion, we cannot presume, under any circumstances which we are able to foresee at this moment, that a hearing before it would be `vain and useless.'"
*211 The Club does not dispute relator's right to sue it for personal injuries, nor does the Club dispute his right to sue it for damages in excess of the Club's insurance coverage. The Club's position is, that the relator has no constitutional right to remain a member of the Club when he has been expelled by a two-thirds vote of the Board of Governors after due notice and hearing, in the absence of fraud or bad faith.
We agree that the courts should leave to the members of a private social club or to the proper board to which the members have lawfully delegated that power, the right to determine whether the action of a member has been such that, in the opinion of such Board, it would interfere with the pleasant, friendly and congenial social relationship between the members. In the absence of a clear allegation and convincing proof, if the case reaches that stage, of fraud or bad faith, the action of the members or duly delegated board should not be reviewed by the courts.
Nor do we believe that this rule should be set aside because the expulsion of the member is based upon the action of such member in exercising a constitutional right. A member has, for example, the constitutional right of free speech, but we believe that such right might be exercised in such a manner as to interfere with the pleasant and congenial association that the Club was intended to afford. Let us assume that a member chooses to exercise that right by loud and boisterous conversation, or in deriding, or exposing the shortcomings of other members. Certainly the pleasant and congenial association that the Club was intended to afford would thereby be impaired.
As we have heretofore indicated, no fraud or bad faith is alleged in the petition for the Alternative Writ of Mandamus, nor do we believe that the charge upon which the relator was tried for expulsion, of itself, indicates any fraud or bad faith. The increase in the ad damnum clause from $50,000 to $100,000 would at least make necessary the employment, by the Club, of an attorney to protect the interest of the Club on the exposure in excess of the $50,000 insurance coverage. Certainly had a judgment been secured in excess of the policy limits, the property  some property, of the Club would have been applied to satisfy such judgment. Who could say that the threat or possibility of such result would not impair or destroy the pleasant, friendly and congenial relationship and association among the members that the Club was intended to afford. In the well chosen words of the Circuit Judge who tried the case, "Experience teaches us that a law suit, whatever its merits, frequently falls somewhat short of promoting a feeling of friendship or affection between the contending litigants."
In order for the charge itself to be evidence of fraud or bad faith in a case of this nature, the charge would have to be such that the Court could hold that no reasonable man would say that the friendly, pleasant and congenial social relationship between the members would be impaired by the conduct complained of in the charge for expulsion.
We have, in America, no social castes but, each group has its own pattern of conduct and activity which it approves, and which it finds enjoyable and inoffensive to its members. Actions, conduct or activity which might be inoffensive to one group might be frowned upon by another. If the courts should be called upon to determine the reasonableness of charges for expulsion, then the action and decorum of the members of all clubs would of necessity be measured by the standard of action the particular Court hearing the controversy might himself or themselves find offensive or inoffensive, as the case might be. Courts should, therefore, not be required to look into the inner workings of private social clubs or the reasonableness of the charges upon which expulsion may be based.
We hold that in cases of expulsions from private social clubs, due procedural *212 requirements as to notice and hearing having been met, it is only required that those who exercise the power of expulsion shall act in good faith and without fraud.
Affirmed.
STURGIS, C.J., and WIGGINTON, J., concur.