413 So.2d 41 (1982)
William WERBER, Appellant,
v.
IMPERIAL GOLF CLUB, INC., Charles Pfister, John Riblet, James Van Horn, Norman Fitter, Betty Murphy and Betty Mills Smith, Appellees.
No. 81-1649.
District Court of Appeal of Florida, Second District.
March 3, 1982.
Rehearing Denied March 30, 1982.
Louis S. Erickson and Richard D. Sparkman of Sparkman, Erickson & Quinn, P.A., Naples, for appellant.
Gerald W. Pierce and James A. Franklin, Jr. of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellees Imperial Golf Club, Inc., Charles Pfister, John Riblet, James Van Horn, Betty Murphy, and Betty Mills Smith.
William A. Gillen, Jr. of Shackleford, Farrior, Stallings and Evans, P.A., Tampa, for appellee Norman Fitter.
GRIMES, Judge.
This appeal from a summary judgment involves a dispute between a social club organized as a for-profit corporation and one of its member-shareholders.
At the time of the summary judgment, the pleadings and discovery on file reflected that Imperial Golf Club, Inc., was a Florida corporation organized and chartered in 1972 as a corporation for profit. Its articles of incorporation authorized it to issue twelve shares of Class A stock and three hundred shares of Class B stock and provided that both classes of stock would have the same rights and privileges except that Class B would not have voting rights. All of the *42 authorized shares of stock were issued prior to June 1974. One share of Class B stock was issued to William Werber.
In 1978 and 1979, the directors of the corporation allowed the issuance of an additional two hundred fifty shares of Class B stock. Mr. Werber became aware of this fact in April 1980, and he began questioning the directors concerning the propriety of this action. The directors thereafter scheduled a special shareholders meeting and mailed proxies to the shareholders of the corporation. The purpose of the meeting was to approve an amendment ratifying the issuance of the two hundred fifty shares of Class B stock.
Mr. Werber objected to the holding of the special shareholders meeting because, he asserted, the proxies did not adequately inform the shareholders of their rights. He filed the present action on May 16, 1980, as a derivative suit against the corporation and the directors for mismanagement. Among other things, he alleged that the directors had realized a personal profit from the unauthorized sale of the additional stock. As part of his suit, he requested a temporary injunction to halt the May 23 meeting. The court held an emergency hearing on May 20, 1980, but denied the motion for injunction.
The shareholders held the special meeting on May 23, 1980, at which they approved the proposed amendment to the articles of incorporation. On that same date, pursuant to prior notice to Mr. Werber, the directors held a special meeting at which they voted to expel Mr. Werber from Imperial Golf Club. Along with the notice of expulsion, the directors tendered a check in the amount of $2,500 to Werber and requested that he surrender his stock certificate. Werber never cashed the check, and he refused to surrender the certificate. On June 6, 1980, he filed a first amended complaint, alleging substantially the same matters as in the original complaint. However, he added a fifth count against the directors demanding compensatory and punitive damages for their wrongful termination of his membership.
The pivotal issue in this appeal is whether the directors could expel Mr. Werber from the corporation and thereby deprive him of standing to carry on the prosecution of his case. In support of the summary judgment, appellees rely on the proposition that except for ensuring a proper notice and hearing, courts will not ordinarily interfere with the expulsion of a member from a social club. Thus, in State ex rel. Barfield v. Florida Yacht Club, 106 So.2d 207, 211 (Fla. 1st DCA 1958), cert. denied, 111 So.2d 40 (Fla. 1959), the court said:
We agree that the courts should leave to the members of a private social club or to the proper board to which the members have lawfully delegated that power, the right to determine whether the action of a member has been such that, in the opinion of such Board, it would interfere with the pleasant, friendly and congenial social relationship between the members. In the absence of a clear allegation and convincing proof, if the case reaches that stage, of fraud or bad faith, the action of the members or duly delegated board should not be reviewed by the courts.
Accord, Everglades Protective Syndicate v. Makinney, 391 So.2d 262 (Fla. 4th DCA 1981).
The resolution of this appeal is not quite so simple. All of the cases cited by appellees in support of the foregoing proposition involved nonprofit corporations which did not issue stock. While the primary function of Imperial Golf Club, Inc., appears to have been the operation of a social club, it was incorporated and maintains its status as a for-profit corporation under the authority of chapter 607, Florida Statutes (1981). Mr. Werber not only holds membership in the club, but he also owns one share of the Class B common stock which carries all privileges except the right to vote.
The purported authority to expel Mr. Werber and to acquire his stock was apparently based upon a portion of the bylaws which authorizes the board of directors to promulgate rules and regulations concerning expulsion of members and upon several sections of the rules and regulations including one which reads:

*43 Resignation ... any member may be suspended or expelled from membership for any of the following reasons:
(1) Failure to pay in accordance with the By-Laws any indebtedness due to the Club.
(2) A violation of the house rules by a member or his immediate family or guest.
(3) Conduct unbecoming a member of the Imperial Golf Club.
(4) For any reason or cause which, in the judgment of the Board of Directors, has or could have a detrimental effect on the well being of the membership of the Imperial Golf Club.
In the event of expulsion from membership, the expelled member shall immediately deliver his stock certificate to the President or Comptroller of the Club and he shall be paid for his stock in accordance with the By-Laws.
It may be that the club had sufficient authority under its bylaws and rules and regulations to seek Mr. Werber's ouster from membership, but on this record there has been no showing that it had the right to take his stock. The authority of a corporation to redeem or involuntarily reacquire its stock must be set forth in the articles of incorporation. See §§ 607.044, .164, Fla. Stat. (1981); 18 Am.Jur.2d Corporations § 473 (1965). Appellees cannot rely on the fact that the club's articles of incorporation are absent from this record because as movants for summary judgment they had the burden of showing the nonexistence of issues of material fact. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). Thus, as the record now stands, appellees had no right to acquire Mr. Werber's stock unless he was willing to sell it to them.[1] Hence, he has standing to carry on the derivative action asserted in counts I through IV.
We do not say that the rule with respect to judicial intervention into the expulsion of members in a nonprofit social club is always inapplicable to for-profit corporations. If one's membership rights are severable from his stock ownership, we see no reason why the same rule should not apply. Insofar as this appeal is concerned, we cannot tell at this juncture whether Mr. Werber's membership rights are severable from his stock ownership. Moreover, we cannot say, as a matter of law, that his allegations in count V that the real reason he was expelled from membership was because he brought a derivative suit against the directors for mismanagement, if proven, would not constitute "fraud or bad faith" as contemplated in State ex rel. Barfield v. Florida Yacht Club, 106 So.2d at 211.
We reverse the summary judgment and remand the case for further proceedings.
SCHEB, C.J., and SCHOONOVER, J., concur.
NOTES
[1] For this reason, there is no need for us to now decide the issue argued in the briefs with respect to whether Mr. Werber could have continued to maintain his derivative suit which complains of prior mismanagement if his stock had been validly taken away from him. Compare Schilling v. Belcher, 582 F.2d 995 (5th Cir.1978), with DiGiovanni v. All-Pro Golf, Inc., 332 So.2d 91 (Fla.2d DCA 1976).