478 So.2d 828 (1985)
CORLETT, KILLIAN, HARDEMAN, McINTOSH AND LEVI, P.A., f/k/a Corlett, Merritt, Killian and Sikes, P.A., Appellant,
v.
William C. MERRITT, Michael D. Sikes and Lawrance B. Craig, III, Appellees.
No. 85-225.
District Court of Appeal of Florida, Third District.
October 29, 1985.
On Motion for Rehearing and Clarification December 3, 1985.
Squire, Sanders & Dempsey and Fulvia A. Morris and Kenneth L. Ryskamp, Miami, for appellant.
Kelly, Black, Black, Byrne & Beasley and Lauri Waldman Ross, Miami, for appellees.
Before HENDRY, HUBBART and DANIEL S. PEARSON, JJ.
*829 DANIEL S. PEARSON, Judge.
The question presented by this appeal is whether a Florida professional service corporation engaged in the practice of law can be compelled to redeem shares held by minority shareholder-attorneys upon termination of their employment with the corporation where neither a statute, the articles of incorporation nor any agreement provides for such redemption. We answer the question in the negative and reverse the judgment of the trial court, which compelled redemption and fixed the price at which the shares were to be redeemed.[1]
The defendant corporation, Corlett, Killian, Hardeman, McIntosh and Levi, P.A., is the successor to Corlett, Merritt, Killian and Sikes, P.A., a professional service corporation formed in 1973, pursuant to Chapter 621, Florida Statutes. When the corporation was formed, the only stock it issued was 2,000 shares to Edward Corlett in exchange for his transfer to the corporation of all of the law firm's assets which Corlett solely owned. In the years following, Corlett sold some of his stock to William C. Merritt (300 shares), Michael D. Sikes (240 shares), and Lawrance B. Craig, III (50 shares) for $50.00 per share.
On March 15, 1982, Merritt, Sikes and Craig voluntarily left the law firm and, unable to amicably resolve their claim that the successor corporation must redeem their shares, sued for this relief.[2] At the end of a non-jury trial, the trial court concluded, inter alia, that the defendant, as a professional service corporation, is governed by Chapters 607 and 621, Florida Statutes,[3] and "as such is required to redeem the Plaintiffs' 590 shares of corporate stock at fair value/underlying book value as of March 15, 1982 [the date of plaintiffs' departure from the firm]." In our view, the trial court's decision is unsupportable.
While Chapter 607, Florida Statutes (1981), which pertains to corporations generally, contains several provisions that implicitly apply to redemption of shares, see §§ 607.164(1)(g), (2); 607.201; 607.204; 607.247; 607.274 1(a)(1), Fla. Stat. (1981), none of these provisions imposes a duty upon the corporation to redeem the shares of a terminated corporate employee.[4] Likewise, while various sections of Chapter 621, which specifically regulates professional service corporations, address the employer-employee relationship in the unique setting of rendering professional services or deal with the transferability of stock, none mandates or even suggests that a professional service corporation has an obligation to redeem a terminated employee's stock. Thus, Section 621.06 requires that only duly licensed or otherwise legally authorized persons render professional services, but expressly disavows that the right to be a shareholder "is dependent upon the *830 present or future existence of an employment relationship between [the shareholder] and such corporation." Sections 621.09 and 621.11 provide, respectively, that capital stock of professional service corporations be issued only to individuals who are legally authorized or duly licensed to render the same specific services as those for which the corporation was incorporated and that the sale or transfer of shares, except to another individual who is eligible to be a shareholder of such corporation, is prohibited. See Street v. Sugerman, 202 So.2d 749 (Fla. 1967). Therefore, while shares of stock in a professional corporation can be transferred only to a duly licensed member of the profession, see § 621.09, they are otherwise freely transferable, and there is presently no requirement that they be transferred to an employee of the corporation.[5] By comparison, when "The Professional Service Corporation Act" was first enacted, Chapter 61-64, Laws of Florida, Section 11, in its more comprehensive discussion of the transferability of shares, required at least the majority of the shares to approve of any transfer:
"No shareholder of a corporation organized under this Act may sell or transfer his shares in such corporation except to another individual who is eligible to be a shareholder of such corporation, and such sale or transfer may be made only after the same shall have been approved, at a stockholders' meeting specially called for such purpose, by such proportion, not less than a majority, of the outstanding stock as may be provided in the certificate of incorporation or in the by laws. At such shareholders' meeting the shares of stock held by the shareholder proposing to sell or transfer his shares may not be voted or counted for any purpose. The articles of incorporation may provide specifically for additional restraints on the alienation of shares and may require the redemption or purchase of such shares by the corporation at prices and in a manner specifically set forth in such articles or the articles may specifically authorize the corporation's board of directors or its shareholders to adopt by-laws restraining the alienation of shares and providing for the purchase or redemption by the corporation of its shares; provided, however, such provisions dealing with the purchase or redemption by the corporation of its shares may not be invoked at a time or in a manner that would impair the capital of the corporation."
In this earlier form, the statute and its implementing rules were interpreted as not *831 merely limiting the transfer of stock to a member of the profession, but as extending a "privilege [to] remaining stockholders to acquire the stock offered for transfer." In re The Florida Bar, 133 So.2d 554, 557 (Fla. 1961). In 1967, Chapter 67-590, Section 3, Laws of Florida, amended Section 11 to its present, less restrictive form, inter alia eliminating the requirement that a majority of the shares approve a shareholder's transfer.[6],[7] Certainly, after 1967, if not before, the transferability of shares in a Florida professional service corporation was "no more restricted than many  if not most  closely held corporations." Kurzner v. United States, 413 F.2d 97, 107 (5th Cir.1969).
There is, then, no statutory requirement of redemption and no statutory requirement that a shareholder be an employee of a professional service corporation. Of course, this does not mean that the articles of incorporation cannot provide or the shareholders cannot agree that shares shall be redeemed or not be sold to or retained by non-employees of the corporation. O'Neill v. United States, 410 F.2d 888 (6th Cir.1969). In fact, "[a]greements and provisions to this effect are not at all uncommon with respect to small corporations whose stock is closely held," 410 F.2d at 898, most likely because stock in closely held corporations, as distinguished from stock in corporations listed on a recognized stock exchange, have no readily discernible market value. See Kay v. Key West Development Co., 72 So.2d 786, 788 (Fla. 1954). But, whether in the setting of a close corporation or a professional service corporation,[8] if, as here, there is no statutory requirement of redemption, the obligation and authority of a for-profit corporation to redeem its stock must be found either in its articles of incorporation, Werber v. Imperial Golf Club, Inc., 413 So.2d 41 (Fla. 2d DCA 1982), or in some agreement, see Brown v. Financial Service Corporation, International, 489 F.2d 144 (5th Cir.1974). Absent such provision for redemption, courts will not write such an agreement for the parties, see Lane, Gelety, Woolsey & Centrone, P.A., Inc. v. Woolsey, 377 So.2d 743, *832 745 (Fla. 4th DCA 1979), cert. denied, 388 So.2d 1120 (Fla. 1980) ("Courts may not interfere with the freedom of contract or substitute their judgment for that of the parties thereto and rewrite a contract in order to relieve one of the parties from the apparent hardship of an improvident bargain."), or interfere with the internal affairs of corporate management, see Freedman v. Fox, 67 So.2d 692 (Fla. 1953). Compare Mann v. Price, 434 So.2d 943 (Fla.2d DCA 1983).
In the present case, there is no provision for redemption to be found anywhere  none in a statute, none in any corporate document, none in any agreement. The appellees argue, however, that a firm engaged in the practice of law as a professional service corporation is so extraordinary that its very nature invests a court with the power to compel redemption whether or not there is an agreement or provision of the articles of incorporation requiring it. In support of their argument, they first rely on the entirely distinguishable cases of Turk v. Turk, 118 So.2d 67 (Fla. 3d DCA 1960), and Kay v. Key West Development Co., 72 So.2d 786 (Fla. 1954).
In Turk, the court held that a provision of a divorce decree requiring a husband to purchase his wife's minority stock interest in a corporation otherwise owned by the husband was a proper exercise of the court's power to adjust and settle property rights between the parties in this equitable proceeding. The ratio decidendi of Turk, inapplicable here, is that a court is empowered to order one spouse to redeem another spouse's stock as a necessary incident of its power to equitably distribute the parties' marital property.
In Kay, after a corporation was formed for the sole purpose of acquiring title to a specific property, the owner of one-half of the capital stock sued the other half-owner of the stock when they were unable to agree upon a sale or division of the property. The court recognized that had the property been acquired as a tenancy in common, the remedy of partition would have been available, and reasoned that the fact title was taken in a corporate name should not preclude a similar result. Therefore, finding that the shares were virtually unmarketable, since it was unlikely that an investor would be willing to purchase the privilege of paying taxes and other costs on the property until the other owner wanted to sell, the court ordered the sale of the corporation's sole asset and the distribution of the sale proceeds.[9]
We are not here dealing with the dissolution of a marriage or with shareholder or director deadlock arising from evenly divided ownership interests. Merritt, Sikes and Craig together own 590 shares, which represent a 29 1/2 per cent ownership interest in the corporation. It is clear that since 1973, Corlett has retained in excess of fifty per cent of the corporate stock. Thus, there is no potential deadlock or threat of discontinued corporate business or inability to carry out the corporate purpose which would warrant the exercise of any "equitable" powers of the court to dissolve the corporation or liquidate its assets. See Freedman v. Fox, 67 So.2d 692 (Fla. 1953). Under the present statutory scheme, the jurisdiction of the courts to liquidate the assets of the corporation is narrowly delineated in Section 607.274, Florida Statutes (1981), and none of its subsections is applicable here. Moreover, that section does not grant a court broad equitable powers to distribute property in a corporate context.
Finally, there is no occasion for treating this law firm as a partnership. As the supreme court in Freedman, 67 So.2d at 693, aptly stated:
"From the bill itself it is plain that the corporation is in fact a corporation, operating fully as such, and that it is a going concern. Certainly at this late date the respondents cannot be successful in their *833 contention that, after all, the arrangement is a partnership and therefore that a remedy is available to them as partners. The corporation was chartered by the State, contracted and incurred debts as a corporation and in all respects operated in that capacity. Apparently it is only when dissension arises that the respondents become dissatisfied with their position as stockholders."
Compare Vinall v. Hoffman, 133 Ariz. 322, 651 P.2d 850 (1982) (Arizona Professional Corporation Act created hybrid of corporation and partnership by providing that corporation shall purchase shares of resigning shareholder).
The appellees lastly contend that even in the absence of any other requirement that the corporation redeem their shares, ethical considerations unique to lawyers necessitate the redemption of the shares. We are not unmindful that while a law firm practicing as a professional service corporation is governed by corporate law, its lawyers are nonetheless governed by the ethical standards contained in the Code of Professional Responsibility, § 621.07, Fla. Stat. (1981). See In re The Florida Bar, 133 So.2d 554, 556 (Fla. 1961) ("The individual practitioner, whether a stockholder in a corporation or otherwise, will continue to be expected to abide by all of the Rules and Canons of professional ethics heretofore or hereafter required of him. The corporate entity as a method of doing business will not be permitted to protect the unfaithful or the unethical."); In re Rhode Island Bar Ass'n, 106 R.I. 752, 263 A.2d 692 (1970); cf. Hagen v. O'Connell, Goyak & Ball, 68 Or. App. 700, 683 P.2d 563 (1984) (where attorney could redeem his stock in legal corporation at full value only by entering into non-competition agreement in violation of a disciplinary rule, provision of agreement calling for forty per cent penalty upon leaving of corporation without entering into non-competition agreement was unenforceable). However, we are not persuaded by either the arguments advanced or the authorities cited by the appellees that, as a matter of public policy, a court should impose a requirement of redemption upon every professional service corporation (or its majority shareholder) engaged in the practice of law.
While the appellees correctly assert that in Vinall v. Hoffman, 651 P.2d 850, the Arizona Supreme Court was squarely presented with the issue of whether a professional corporation is required to purchase the interest of a shareholder when he or she resigns from practicing with the corporation, they overlook that the issue was presented against the backdrop of legislation, Arizona's professional corporation statute, which significantly, unlike the Florida law, mandated that within ninety days following the resignation of a shareholder, all of the shares of such shareholder be transferred to or acquired by persons qualified to own such shares or by the corporation.[10] Thus, the Arizona Legislature had imposed the requirement of redemption, and the task of the Arizona court was merely one of statutory interpretation: was redemption required only upon the professional's resignation from the practice of the profession or upon his or her resignation from the corporation as well? The Arizona Supreme Court construed the statute as encompassing both types of resignation.[11],[12]
*834 Nor can the appellees take any great comfort in Melby v. O'Melia, 286 N.W.2d 373. There, although the court in dicta expressed its concerns about the interplay between ethical obligations and corporate law, the issue before the court was whether an attorney withdrawing from a professional service corporation engaged in the practice of law was entitled to a dissolution of the service corporation according to partnership standards. The court held that corporate, not partnership, standards applied, and denied the attorney relief. It went on to muse on an issue not before it  redemption  and indicated that ethical considerations which prohibit an attorney from being a shareholder in more than one service corporation engaged in the practice of a single profession at any one time might require that a member of a service corporation be compensated for his shares in the corporation at a fair value.
The appellees urge that the considerations motivating the Arizona court to construe its ambiguous legislation as requiring redemption upon withdrawal of a professional and those engendering the Wisconsin court's dicta should persuade us to engraft judicially a redemption requirement upon Florida's professional service corporation act. They add to the parade of horribles that protracted litigation between partners of a law firm undermines the legal system and erodes public confidence in the profession; withdrawing shareholders would have an ongoing right of access to the corporation's books and records, which arguably could make them privy to certain client confidences; and a professional service corporation is specifically prohibited from engaging in the practice of law, except through its officers, agents and/or employees. In our view, none of the ethical dilemmas or "[a]bsurdities [which] could result because of this unique position," 651 P.2d at 852, are so compelling as to warrant a court-imposed redemption obligation on the part of the corporation.
That a professional who resigns from the corporation could well be left in the unfortunate position of owning unmarketable shares of stock is generally true of the minority shareholders in all close corporations. But rather than being a compelling reason in favor of a court intervening, the distinct probability of this unfortunate state of affairs arising is a compelling reason why parties must agree in advance on a redemption provision. Where an employee who purchases such shares for valuable consideration either lacks the foresight or the bargaining power to insist upon a redemption agreement in the event of his resignation, it is not incumbent upon the courts to protect him from his own improvidence or lack of strength.
Likewise, that an ex-employee's shares may fall into or be in the hands of an attorney hostile to the law firm, or that ex-employees may own shares in more than one professional service corporation at the same time, are matters not before us, and while they might justify action by the Florida Bar, do not justify a court compelling redemption. Assuming, arguendo, that non-employee shareholders have a right of access to the corporation's books and records, that right of access is limited to financial and corporate records and will not include client files. The argument that a professional service corporation cannot engage in the practice of law except through its officers, agents and employees is, of course, answered by Section 621.06, which provides that one need not be an employee to be a shareholder. The spectre of protracted litigation between attorneys undermining the public's confidence in the bar, even if empirically shown to be true, is hardly justification for a court to end the litigation by imposing, rather than refusing *835 to impose, the burden of redemption on the corporation.[13],[14]
Accordingly, there being no statute, article of incorporation, by-law, agreement, or equitable or ethical consideration which would empower a court to impose upon the appellant corporation the obligation to redeem its ex-employees' shares, we reverse the judgment under review and remand the case to the trial court for the entry of judgment in favor of the appellant on the appellees' claim for redemption and to conduct further proceedings on the unresolved claims referred to in note 2, supra.
Reversed and remanded.
HENDRY, J., concurs.
HUBBART, Judge (dissenting).
I must respectfully dissent. I would affirm the final judgment under review in all respects.
By today's decision, the court holds that members of the Florida Bar, who are employed by and hold minority stock in a professional service corporation engaged in the practice of law, have no right to require the corporation to redeem their stock when they resign from employment with the corporation  unless the corporation's articles of incorporation or an agreement between the parties provides otherwise. Absent such a provision, as in this case, the court holds that the rights of the respective parties are virtually the same as in any other closely held corporation, and, accordingly, the corporation and the majority stockholders therein are under no legal or ethical obligation to redeem the stock of such resigning attorney-stockholders. I cannot agree with such a result.
First, I think a professional service corporation which renders legal services is under a legal obligation to purchase the stock of its resigning attorney-stockholders, else it is in violation of Section 621.06, Florida Statutes (1983), of the Professional Service Corporation Act, which prohibits such a corporation from rendering professional services "except through its officers, employees and agents who are duly licensed or otherwise legally authorized to render such professional services within this state... ." This is so because if the corporation refuses to redeem such stock and its resigning stockholders continue to practice law in Florida, the corporation will be practicing law through firm stockholders who are no longer its officers, employees, or agents, contrary to the above statute. For that reason, I think this statute implicitly imposes upon such a professional service corporation a legal obligation to redeem the stock of any of its resigning attorney-stockholders.
Second, and more to the point, I think the majority attorney-stockholders in such a professional service corporation are under an ethical obligation enforceable by law to vote their stock so as to require the corporation to redeem the stock of any of its resigning attorney-stockholders  else they may be parties to serious violations of the Florida Bar Code of Professional Responsibility. This is so because if the majority attorney-stockholders refuse to redeem such stock, the resigning attorneys will have automatic access to corporate books and records, including fee records and arguably client files, and will be allowed to attend stockholder meetings where firm affairs and client confidences are discussed. This plainly puts the majority attorney-stockholders of the corporation in violation of D.R. 4-101(B)(1) of the Florida Bar Code of Professional Responsibility which prohibits an attorney from revealing client confidences, subject to certain exceptions not applicable here. Further, if the resigning attorney-stockholders agree to represent clients whose interests are adverse to clients represented by the majority attorney-stockholders, the latter attorneys will *836 automatically be in violation of D.R. 5-105(B) of the Florida Bar Code of Professional Responsibility which prohibits attorneys in the same law firm from representing multiple clients whose interests are adverse to one another. The same result obtains where the resigning attorney-stockholders sell their stock to other attorneys whose clients have interests which are adverse to the interests of clients represented by the majority attorney-stockholders. Finally, to the extent that the corporation declares any dividends, the resigning attorney-stockholders will be able to share in such dividends in violation of D.R. 2-107(A) which prohibits fee-sharing with attorneys who are not partners or associates in the law firm, subject to exceptions not applicable here.
Even if, as the court suggests, these ethical violations could somehow be prevented, at the very least the entire arrangement flies in the face of E.C. 9-6 of the Florida Bar Code of Professional Responsibility which imposes upon attorneys a duty "to strive to avoid not only professional impropriety but also the appearance of impropriety." To allow law firms to let their minority attorney-stockholders resign from the firm without redeeming their stock gives the appearance that the resigned attorneys, as stockholders in the law firm, are still privy to firm-client confidences, still share in firm-client fees, and now, having resigned, may represent outside clients whose interests are adverse to firm clients. In my view, public confidence in the legal profession is greatly undermined by such a legally condoned arrangement. All things considered, I think the majority attorney-stockholders have an ethical obligation enforceable by law to redeem the stock of the resigning, minority attorney-stockholders so as to avoid these serious violations of the Florida Bar Code of Professional Responsibility.
I frankly recognize the force of Judge Pearson's opinion to the contrary. His opinion, I think, makes the best possible case for the result reached by the court. Still, I remain unpersuaded and fear that today's decision may unleash a myriad of legal and ethical quagmires which will plague us for years to come. Minority stockholder suits involving law firms, for example, may be one of the many spinoff problems which today's decision spawns. I think, for the reasons expressed above, a contrary result is required under the law of this state.
I would affirm.

ON MOTION FOR REHEARING AND CLARIFICATION
PER CURIAM.
The appellees' motion for rehearing is denied. The appellees' motion for clarification is granted, and the first sentence of footnote 2 of the court's opinion is amended to read:
"In addition, Merritt, Sikes and Craig claimed an interest in certain contingent fee cases for work performed before their departure and for work in progress, and sought an accounting."
NOTES
[1] Our decision renders it unnecessary for us to address the parties' contention concerning the correctness of the valuation.
[2] In addition, Merritt, Sikes and Craig claimed an interest in certain contingent fee cases for work performed before their departure and sought an accounting. The defendant corporation counterclaimed for moneys collected and retained by the appellees after their departure for fees earned by the corporation before their departure. The trial court never ruled on these separable claims, and they are still pending.
[3] Section 621.13 defines the interrelationship between Chapter 607 and Chapter 621: Chapter 607 is applicable to a corporation organized pursuant to Chapter 621, except to the extent that provisions of 621 conflict with those of 607, and in such case, provisions of 621 shall take precedence.
[4] Section 607.164(1)(g) provides that the articles of incorporation shall set forth the provision for any preemptive right granted to shareholders; Section 607.164(2) provides that the articles may include any provision restricting the transfer of shares; Section 607.201 provides that no redemption of shares shall be made when the corporation is insolvent or would be rendered insolvent by the purchase; Section 607.204 discusses the cancellation of redeemable or other reacquired shares; Section 607.247, read in conjunction with Section 607.244, provides for a corporation's reacquisition of shares of a dissenting shareholder where the corporation has a plan to merge or consolidate, or to sell or exchange all or substantially all of its assets; and Section 607.274 empowers the circuit courts to liquidate the assets and business of a corporation in certain limited instances.
[5] A plausible explanation for the addition in 1967 of Section 621.06, see Ch. 67-590, § 1, Laws of Fla., which provides that the right of an individual to be a shareholder of a corporation organized under Chapter 621 does not depend upon the existence of an employment relationship between that individual and such corporation, is that the provision ensures the continuity of the entity in the event the shareholder's employment is terminated. Continuity of the entity, unnecessary to a partnership, is a crucial characteristic of "corporateness." See Kurzner v. United States, 413 F.2d 97 (5th Cir.1969); Melby v. O'Melia, 93 Wis.2d 51, 286 N.W.2d 373 (Ct.App. 1979) (withdrawing attorney-shareholder from professional service corporation was not entitled to accounting and dissolution of corporation according to partnership standards). If it were otherwise, the continued existence of the corporation would depend merely upon the willingness of the remaining members to agree either prior to or at the time of the employee's termination to acquire his interest or to employ his proposed successor. In this respect, the corporation would be indistinguishable from a partnership, the continuity of which, in the event of the departure of a member, is dependent upon an agreement providing that the business will be continued by remaining members. See generally Kurzner v. United States, 413 F.2d at 110. Notably, in O'Neill v. United States, 410 F.2d 888 (6th Cir.1969), Ohio law imposing only the limitation that shareholders be licensed to practice the profession was interpreted by the court as not precluding the ownership of shares by a person who is not an employee of the corporation. Thus, while a shareholder may be an employee of the corporation, he need not be: the relationships of the corporation to its employees and to its shareholders are distinct. Cf. Werber v. Imperial Golf Club, Inc. 413 So.2d 41 (Fla. 2d DCA 1982) (where person not only held club membership, but also owned a share of common stock in club organized as a for-profit corporation, club had no right to redeem such person's stock against his will in absence of authority in the articles of incorporation, even assuming club had sufficient authority under its by-laws and rules to oust the stockholder from membership).
[6] Because the Professional Service Corporation Act was drafted rather hastily in response to the "Kintner Regulations," some authorities suggest that certain of its provisions were given insufficient legislative consideration  hence, the 1967 revision. See Kurzner v. United States, 413 F.2d 97, 107 n. 48 (5th Cir.1969); Buchmann & Bearden, The Professional Service Corporation  A New Business Entity, 16 U.Miami L.Rev. 1 (1961). The shortcomings of Section 621.11, Florida Statutes (1961), were pinpointed as (1) the ambiguity in requiring a majority vote of the outstanding stock if the prospective seller is the sole stockholder or the majority stockholder; and (2) the unresolved doubt in the situation where a sole stockholder proposes to take in a new stockholder and transfer some of his stock to that person. Id. at 9-10. Section 621.11 now reads:

"  No shareholder of a corporation organized under this act may sell or transfer his shares in such corporation except to another individual who is eligible to be a shareholder of such corporation."
While majority shareholder approval is no longer required by Section 621.11 as a condition precedent to a shareholder's right to alienate his shares, the articles of incorporation, as always, may provide for redemption or purchase of such shares by the corporation. It has been suggested that the language pertaining to provision in the articles of incorporation for redemption of shares was included in the original statute both to identify the problem that "[t]he refusal of the minority interests to approve the contemplated transfer of stock by a majority stockholder could be very oppressive from a practical standpoint and might result in a severe pecuniary loss," and to propose its solution that "some very strong provision be made in the form of a buy-and-sell agreement, or a bylaw provision for redemption of this person's stock by the corporation, or by a forced sale to the remaining stockholders." 16 U.Miami L.Rev. at 11 (footnote omitted). It logically follows, then, that when the requisite of majority approval was deleted by the 1967 amendment, the problem created by it no longer existed, and a provision concerning redemption could also be deleted.
[7] Some states provide that this stock must be surrendered at book value to the corporation unless some alternative provision is incorporated in the articles or the by-laws of the corporation, but the Florida act contains no such provision. 16 U.Miami L.Rev. at 11. See, e.g., Moroze & Sherman, P.C. v. Moroze, 104 A.D.2d 70, 481 N.Y.S.2d 699 (1984) (Section 1510, Business Corporation Law, as well as by-laws of corporation, required redemption).
[8] See n. 3, supra.
[9] The court acknowledged that Section 608.28, Florida Statutes (1953), permitting dissolution of the corporation where the opposing ownership interests are evenly divided, was enacted after the institution of the proceedings before it, and was therefore merely supportive of its decision.
[10] Section 621.10, Florida Statutes (1981), provides that in the event of a corporate employee's legal disqualification or acceptance of employment that places legal restrictions upon his ability to render professional services, the employee shall sever all employment with or financial interests in such corporation. Notably, Florida's statute requires the employee to sever financial ties with the corporation, but does not impose upon the corporation a duty to redeem the employee's shares. Moreover, the statute mandates severance only with respect to employees who become legally disqualified, not those, as appellees herein, who voluntarily resign employment but remain qualified to practice.
[11] The Arizona Court of Appeals had held that only resignation from the practice of the profession was intended.
[12] The Arizona court reasoned that the legislature must have intended that the withdrawing professional not be left with shares of little or no value; that neither the professional nor the corporation should be left in a position where either may expose the other to liability for malpractice or negligence by virtue of post-withdrawal acts; and that any other construction would run afoul of the ethical prohibition against fee splitting.
[13] It might be added that the instant litigation is hardly protracted.
[14] The appellees' concerns that they might be subject to liability subsequent to their departure are exaggerated. Under Section 621.07, Florida Statutes, the personal liability of shareholders in a professional service corporation is "no greater in any aspect than that of a shareholder-employee of a corporation organized under chapter 607."