[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TOSECOND COUNT
Rogin, Nassau, Caplan, Lassman Hirtle for plaintiff.
Tyler Cooper Alcorn for defendant.
The plaintiffs are two attorneys who were employees and CT Page 7727-E stockholders of defendant. On May 31, 1993 they left the defendant to form their own professional service corporation. The plaintiffs claim to continue to be shareholders of the defendant. Relying on that status they have moved for corporate dissolution of the defendant under § 33-382 of the general statutes. They claim that the defendant has repudiated its obligations to pay or to agree to pay them the full value, their shares in the defendant professional corporation.
They allege that pursuant to the Shareholders, Agreement as it was amended and a Deferred Compensation Agreement, upon termination of their employment with the defendant, the defendant was required to redeem their shares for a price reflective of the full value of such shares, including amounts due pursuant to the Deferred Compensation Agreement.
The defendant has filed a motion for summary judgment based on two grounds:
 (1) Attorneys may not be shareholders in more than one professional corporation.
 (2) The plaintiffs have had their shares redeemed under the Shareholders Stock Agreement; therefore they are no longer shareholders and cannot qualify as plaintiffs under § 33-382(b)(1) giving them the right to seek dissolution of the defendant.
In the court's opinion the decision on this motion turns purely and simply on an analysis of § 33-382(b)(1). In that sense the two grounds advanced for this motion are related but only in the sense that they are directed toward that analysis. Do the plaintiffs as shareholders have a right to bring an action of dissolution under our law? How is a shareholder or as the statute says a "holder of shares" to be defined — that is the central question since only such a person can bring an action for dissolution under the statute.
A review of the Shareholders, Stock Agreement is necessary. Section 4.1 provides that if the employment relationship terminates for any reason other than death or disability the corporation (defendant) shall redeem the Shareholder's stock and shall pay the shareholder "the redemption price, determined in accordance with the provisions contained in this agreement in the manner contained in the Certificate of Value." Section 5.1 sets forth how the valuation of the Certificate of Value is determined and subsection CT Page 7727-F (b) states: "The maximum redemption or purchase price shall be the value contained in the last Certificate of Value duly executed."
Section 5.2 states in part that: "It is understood and agreed between the parties hereto that the redemption or purchase price determined in accordance with the provisions of this agreement is the full agreed value of each share of stock of the corporation subject to this agreement."
Section 5.4 states in part that: "Upon receipt of the redemption or purchase price in cash, the shareholder, his estate, or transferee shall endorse and deliver their shares of stock to the corporation or other appropriate purchaser(s). Any stock redeemed by the Corporation from its shareholders may be retired, cancelled, or held by the Corporation as Treasury Stock."
Section 5.6 in relevant part states that: "In the event that a shareholder, his estate or transferees, on any of the dates provided for redemption of stock by the Corporation pursuant to this agreement, neglects fails, or refuses to surrender the stock to be redeemed, duly endorsed for transfer, upon the expiration of sixty (60) days after notice of the call for redemption has been mailed to the holder of record, then the corporation may deposit the redemption price for each share called for redemption to the credit of such shareholder, his estate or transferees in any bank or trust company authorized to do business in the state of the principal place of business of the Corporation, and upon such deposit made and notice thereof mailed to the holder of record of such shares of stock, the right of such holder to any further dividends or to participate in any distribution of assets shall cease and terminate and such holder shall have no other or further recourse or right against the Corporation on account of such stock."
Black's Law Dictionary, 6th ed. defines "redemption" as "the reacquisition of a security by the issuer pursuant to a provision in the security that specifies the terms on which the reacquisition is to take place" or as "repurchase of notes, bonds, stocks bills or other evidence of debt by paying their value to their holders."
Ballentine's Law Dictionary defines "redemption" as "a recovery back of property by payment of money or performance of other condition. A regaining of property taken from one, as under a mortgage, by paying what is due. CT Page 7727-G
Under the explicit terms of Section 33-382(b)1 the superior court may wind up the business of a corporation on the "petition of the following persons. Dissolution is appropriate "on a proceeding by holders of shares" . . . when certain factors have been established which the statute then sets forth. It is clear that to request dissolution under the statute one must be a shareholder, a "holder of shares," cf Bland v. Lee C. Bland Corp. , 16 Conn. Sup. 268,269-270 (1949). This is not surprising given the draconian consequences visited on an otherwise operating corporate entity by permitting dissolution, see § 33-378 C.G.S. A., see subsections (a) and (b). The legislature certainly knew how to permit persons who formerly held shares to be considered shareholders for purposes such as indemnification issues, see § 33-320a(11); they did not adopt the language of this statute for dissolution actions. The only non-shareholders who can request dissolution of a corporation under § 33-382 are creditors under certain circumstances and the attorney general by quo warranto proceedings. Except for these two special cases it is evident that the legislature intended the dissolution remedy be reserved only for those situations when there is internecine warfare within a corporation between people with a sufficient number of shares so that real questions as to the viability of the corporation are raised. People who are not creditors, or the attorney general or present shareholders are not thereby deprived of their rights to bring a valid claim for monetary or other relief against the corporation — they just can't have it dissolved. To determine whether a litigant dissolution is a "holder of shares" under the statute, it would seem to be clear that you look to the original shareholder agreement between the parties.
Both parties have spent much time and effort and have submitted several excellent briefs which have argued issues and points of law which although interesting do not address what at least the court perceives as the central issue raised by this motion — under our statutory law are the plaintiffs, "holders of shares" so that pursuant to § 33-382(b)(1) they can bring an action for dissolution. Simply put, that's it. Each side in its own way at least as to a portion of their arguments is in effect asking the court to judicially amend the language of the statute. Although it may be necessary to read statutory language in certain ways to avoid serious constitutional questions or perhaps conflicts with accepted standards of professional or ethical behavior, this is a venture on which a trial court should be hesitant to embark unless absolutely necessary. After all the legislature not the judiciary is elected to pass laws. CT Page 7727-H
The defendant has cited much authority for the proposition that since the plaintiffs have formed their own professional corporation to practice law "common sense, the rules of ethics and the clear implication of our professional corporation law" require that this court find since the plaintiffs can't be shareholders in more than one corporation, they cannot be considered shareholders for the purposes of seeking corporate dissolution.
For the preliminary proposition that a lawyer can't be a shareholder in his or her own professional corporation the defendant argues that this would compromise the lawyer's duty of undivided loyalty to the client, cf In re Rhode Island Bar Association,263 A.2d 692, 696 (R.I., 1970), In re New Hampshire Bar Association,263 A.2d 853, 855 (NH, 1970), Melby v. O'Melea,286 N.W.2d 373, 374 (Wis. 1979). As the defendants note, how can a client's information be kept confidential when his or her lawyer is a member of two law firms? Also the defendant points to § 33-182g which provides no professional corporation may give stock to anyone other than a person specified in § 33-182c which provides that people licensed to render the same professional services may organize and become shareholders "for the sole and specific purpose of rendering the same professional service." The plaintiffs go on to argue that since the plaintiffs are no longer providing professional services as employees of the defendant "by definition" they can no longer be a shareholder of the defendant.
The plaintiffs counter by pointing out that the Model Business Corporation Act Professional Corporation Supplement (1984) contains no prohibition on share ownership in more than one professional corporation. The plaintiffs refer to Vinal v. Hoffman,651 P.2d 850 (1982), a case cited by the defendants. The case does present a list of the absurdities and impracticalities that would result from an inactive professional's holding stock in a professional corporation but, the plaintiffs emphasize, they seek the very relief the Vinal court ordered — redemption of the departing shareholder's stock. Also see Melba v. O'Melia, 286 N.W.2d at page 375.
As to the ethical problem, if any, they argue ethical rules do not prohibit a lawyer from owning shares of more than one professional corporation as long as no independent ethical violations result.
However this question of whether a lawyer can be a shareholder CT Page 7727-I in more than one professional corporation is resolved, it is not in the court's opinion strictly relevant to the matter at hand — interpreting what present right the plaintiffs might have under § 33-382(b)(1) to bring a dissolution action.
That is, if the defendant is correct there may be grounds for the attorney general to bring a quo warranto action under the statute to dissolve the plaintiffs new professional corporation, see § 33-382(b)(4). But the defendant's argument as to the propriety of a lawyer having the right to be in two such corporations has nothing to do with whether in fact the party bringing the dissolution action is a "holder of shares" for § 33-382(b)(1) purposes in the corporation first formed. If in fact the "Shareholders Stock Retirement Agreement" could be read as to allow the plaintiffs to have the status of shareholders despite the fact that they've formed a new professional corporation then they can resort to the statute for the remedy it provides — for § 33-382(b)(1) purposes they would in fact be shareholders of the corporation they are trying to dissolve. If in fact dual membership is improper that might be a reason why a court wouldn't grant a dissolution but it would not prevent the plaintiffs from bringing the action in the first place.
The defendants might be saying that the ethical considerations raised require the court to interpret the shareholders agreement as providing that the plaintiffs can't be considered shareholders since they have formed a new corporation no matter what the agreement itself says. But the shareholders' agreement was drafted long before the plaintiffs terminated their relationship with the defendants and formed a new corporation and their status as shareholders must be determined by a reading of that agreement on its own terms. In effect what the defendants want the court to do is to define "holders of shares" as used in § 33-382(b)(1) by considerations that have nothing to do with what the underlying agreements of the parties have to say about that status — the court declines the invitation.
The plaintiffs also ask the court to ignore or amend what seems to be a plain reading of the statute.
These parties had entered into a "Shareholders, Stock Retirement Agreement" and a "Deferred Compensation Agreement." The latter is the subject of a separate motion for stay and summary judgment. The essence of the plaintiffs, argument in opposition to the present motion for summary judgment is set forth in CT Page 7727-J the first few pages of its October 13, 1993 memorandum. Nowhere do the plaintiffs seem to contest the proposition that under § 33-382(b)(1) one must be a shareholder to bring a dissolution action. Their argument is basically this: the Shareholder Stock Retirement Agreement and the payment provisions of the Deferred Compensation Agreement were intended to work together to assure a departing shareholder the full value of his or her ownership interest in the professional corporation; the plaintiffs have been paid nothing under the Deferred Compensation Agreement and so have not been paid the full value of their stock — "therefore, they remain shareholders precluding summary judgment." The brief goes on to say there is no legal or ethical impairment to the plaintiffs continuing as shareholders — "nor should there be; plaintiffs are continuing as shareholders only as necessary to terminate their relationship with defendant in accordance with law." Apparently when one leaves a professional corporation and there is a dispute over the amount of money the person is entitled to, whenever that individual held shares in the corporation, no matter under what circumstances, and without any need to examine any underlying agreement which defines shareholders status and rights, that person can be regarded as a shareholder for the purposes of a § 33-382(b)(1) dissolution action. Or put another way, to avoid any hint of ethical problems one can say he or she is a shareholder only in a limited sense — to perfect any claims for added monies or compensation under the law, but still claim to be a shareholder in a broader sense so that a dissolution action can be brought. Again this court declines to accept the plaintiffs' invitation to create a hybrid definition of "holders of shares" as used in the dissolution statute.
Where do we find the answer to the question of whether a person can be considered a "holder of shares" for the purposes of § 33-382(b)(1)? As previously indicated it seems to me that we have to turn to the underlying shareholders agreement in these cases which as here are often drawn up before there is any dispute between the parties and so is more likely to be a reliable indication of what the parties understood their status and rights would be in the context of case and statutory law, including § 33-382(b)(1).
Affidavits submitted by the defendant are uncontroverted on several factual points. Once the plaintiffs told the defendant they were leaving to form their own firm defendant gave notice to the plaintiffs that pursuant to the shareholders agreement the corporation would redeem their stock at the redemption price of CT Page 7727-K $10000. The plaintiffs refused to surrender their stock. Sixty days after the notice of call for redemption had been given, defendant used the mechanism set forth in 5.6 of the agreement to deposit the redemption price for each share called for redemption in a bank account. The money was so deposited. The agreement also provides a mechanism for determining the redemption price for the stock. The redemption price is determined by the Certificate of Value, § 5.1 of agreement. Section 5.2 says: "It is understood and agreed between the parties hereto that the redemption or purchase price determined in accordance with the provisions of this agreement is the full agreed value of each share of stock of the corporation subject to this agreement." There is no claim made that the proper mechanism or procedure was not followed to determine the Certificate of Value. Interestingly the January 7, 1994 Kainen affidavit says at paragraph 7: "The amount provided in the Shareholders' Stock Retirement Agreement was never intended to be the full amount due a shareholder or that shareholder's equity in the firm." The point is however that even Mr. Kainen concedes an "amount" is set forth in the agreement. That is the "redemption price." "Redemption price, "given the explicit language of this agreement has a specific meaning — see definitions previously quoted. Under the terms of the agreement the redemption price having been deposited in a bank the plaintiffs are no longer shareholders of the defendant corporation and cannot bring a dissolution action no matter what other remedies they may have in tort or contract.
The summary judgment motion as to the second court is granted.
Corradino, Judge CT Page 7727-L