[No. 32777. Department One. April 14, 1955.]

CHARLES CLEMENTS, *Appellant*, v. RAYMOND OLSEN *et al.*, *Respondents.*[1]

*McMullen, Snider & McMullen,* for appellant.

*Hall & La Londe* and *Simpson & Simpson,* for respondents.

[1] Reported in 282 P. (2d) 266.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing an action for rescission and cancellation of a deed.

In the fall of 1942, Charles Clements, then of the approximate age of sixty-four years, purchased an eighty-acre tract of farm land in Clark county. The purchase price was five thousand dollars, of which the respondents supplied five hundred dollars. Mrs. Olsen is his niece. The January following the purchase, he persuaded the Olsens to move in with him under some sort of an oral agreement that they would care for him and he would will his property to Mrs. Olsen. He executed the will. After they moved in, appellant and Mr. Olsen built a small house for him on the north forty acres, across the road. He still occupies the small house.

April 24, 1946, he conveyed the eighty acres to the Olsens by warranty deed. The deed contained seven conditions:

"1. That the Grantees will pay before delinquency all state and county taxes which may hereafter be levied or assessed against said real estate.

"2. That the Grantees will keep the buildings located upon said real property insured against loss by fire for their full insurable value, loss, if any, payable to the Grantor. Any sum or sums received by the Grantor under said policy or policies shall be used by him to repair or replace the buildings damaged or destroyed.

"3. That the Grantees will keep all buildings located upon said real property in reasonably good repair, and they shall keep up the fences and farm the said real property in a good and husband-like manner.

"4. That so long as the Grantor continues his residence upon the above described property as hereinafter provided, the Grantees shall furnish him with all food desired by him; but in the event he shall abandon his residence upon said real property for a period of thirty days or more, then the Grantees shall be required to pay to the Grantor only the sum of Twenty-five ($25.00) Dollars per month toward such expense; and will, in the event of sickness on the part of the Grantor, while he continues to live upon said real property, prepare the food for his meals.

"5. That the Grantees will do all necessary washing, ironing and mending of the Grantor's clothing.      .

"6. That the Grantees will nurse and look after the Grantor in the event of his illness, to the fullest extent of their ability, and will procure for him in the event of extended illness such further medical and nursing care as he may direct.

"7. The Grantor reserves the right to use and occupy the smaller dwelling upon said premises, and which he now occupies, for the rest of his natural life, and the land surrounding the same, but not in excess of five (5) acres; and is to have the unrestricted use of said building and land without any interference from the Grantees."

The parties got along very nicely until the fall of 1950. They helped each other with their farming and kept the fences in repair. Mrs. Olsen furnished appellant with food, washed, ironed and mended his clothing as she was required to do under the conditions in the deed. They took him to various doctors whenever he so desired. Then a dispute arose as to who should pay for the medicine and doctor's bills. They tried to reach an agreement, but both parties were obstinate. He tore up the will making Mrs. Olsen his beneficiary, and this action was commenced in August, 1951.

After a trial, the court entered findings, conclusions, and judgment dismissing the action, and plaintiff appeals.

Assignments of error are directed to those portions of finding No. 9 that respondents had substantially fulfilled and complied with condition No. 6 of the deed; that appellant had not had an extended illness within the meaning of condition No. 6; and that under the contract he is required to pay for medical and nursing care so long as he is able to do so. Error is also assigned to those portions of finding No. 8 which deprived him of the right to make a selection of five acres of his choice, and which held that "land surrounding dwelling" meant land lying north of the county road; in permitting respondents to use the spring north of the county road and lying within the tract selected by him, and in refusing to permit appellant to have the unrestricted use, without interference, of five acres surrounding the dwelling occupied by him.

Finding No. 9 stated:

"Plaintiff alleged and claimed a breach of condition number 6 of the deed, but the evidence fails to sustain this claim. The defendants have, since the date of the deed, made substantial effort to care for the plaintiff personally in instances where he needed and requested such care. The defendants at all times, when requested by the plaintiff, took him to see a doctor in Battle Ground. The plaintiff has been required, however, to pay for the services of the doctors that he has seen and for medicines and treatments of various types. Such practice has been customary between the parties, both before and subsequent to the date of the deed. Although the plaintiff has had some illness on occasion, he has not had since the date of the deed an 'extended illness' within the meaning of those words as used in condition number 6 of the deed. The defendants have substantially fulfilled and complied with condition number 6 of the deed.

"The court finds that the meaning of the clause in paragraph number 6 of the deed: '. . . and will procure for him in the event of extended illness such further medical and nursing care as he may direct' is that the defendants will procure and obtain such care in any event, that the plaintiff is required to pay therefor so long as he is able to do so, but that in the event the plaintiff is unable to pay for such care, the defendants are required to pay therefor."

Appellant does not argue that the court erred in finding that appellant had not had an extended illness. The testimony does not preponderate against that finding. Neither does it preponderate against the finding that respondents had substantially fulfilled and complied with condition No. 6 of the deed. The court was therefore correct in dismissing the action in so far as it sought a rescission and cancellation of the deed.

However, under the pleadings asking for a construction of conditions Nos. 6 and 7, the court was required to interpret the meaning of the word "procure."

Courts do not have the power, under the guise of interpretation, to rewrite contracts which the parties have deliberately made for themselves. *Chaffee v. Chaffee*, 19 Wn. (2d) 607, 145 P. (2d) 244.

█ In ascertaining the intention of the parties to a written instrument, the courts must look to the wording of the instrument itself as made by the parties, view it as a whole, and consider all of the circumstances surrounding the transaction together with the interpretation of the instrument by the parties themselves as indicated by their subsequent acts. *Crystal Recreation v. Seattle Ass'n of Credit Men,* 34 Wn. (2d) 553, 209 P. (2d) 358. The trial court in its oral decision said this:

"Well, some elasticity must be given to these things and not take everybody right at his word, especially if he is an old man like this and has his ideas; that they must try to make up and have a reasonable relationship among themselves. That lies behind the whole agreement. These parties were related and it was expected that they would each be kind and reasonable to the other and this agreement can't go on and fulfill its function unless both parties follow that out in spirit, and if one loses his temper, why, not too much should be made of that. It should be overlooked and every effort made to carry out the spirit of the agreement after this is done. But, I think, then, to come right down and answer the question, it must be answered this way, that so long as Mr. Clements has the means to pay for the doctors and for the medicines that he needs that he should pay, but if he can't pay it, then, the obligation should be on the Olsen's to pay for it because it must be furnished. That is the spirit that runs through the document all the way through. I don't know what his means are, whether he still has means to purchase his medicines and have the necessary medical attention or not, but if he hasn't or if the time comes when he hasn't, then I think procure here in this agreement would have a new meaning in the new circumstances. They will procure for him in the event of extended illness such further medical and nursing care as he may direct. That means procure in all events, procure at his expense if he can pay for it, but procure anyway. If he can't pay for it still they must be procured."

█ We are satisfied that the trial judge did not intend to rewrite the deed and that he conscientiously intended to make a common-sense interpretation of the provisions of condition No. 6, and one which would serve the best interests of the parties to the controversy. However, we cannot

agree with his interpretation. Nothing was said in the deed about ability to pay. When we consider the age and physical condition of appellant, the relationship of the parties, the purpose for which the deed was executed, and when we consider conditions Nos. 1 to 6 inclusive, as a whole, we are convinced that condition No. 6 contained the same obligation on the part of the grantees to perform at their own expense as did the preceding five conditions. Respondents may have made a poor bargain, but they cannot look to the courts for relief.

This case was heard April 18 and April 21, 1952. At that time, appellant had not made a selection of five acres surrounding his house, as he had a right to do under condition No. 7. The property conveyed by the deed in question consists of two "forties", one north and one south of the center line of the section. A county road enters the section from the west common corner of the two forties and then angles in a northeasterly direction across the north forty. The house occupied by respondents is about one hundred feet south of the road. There is an eighteen-foot lane connecting respondents' house and the road. The small house occupied by appellant is situated about three hundred feet north of the road. The spring supplying the water for the large house is north of the road. There is a small spring north of appellant's house, from which he receives his water supply.

August 11, 1953, there was another hearing. Appellant reported as to his selection of the five acres. He started at the common point of the north and south forties on the west side, then proceeded twenty rods east, then forty rods north, then twenty rods west, and then south to the point of beginning. Included in the five-acre tract was the spring used by respondents and also part of the county road. He set posts around the area sixteen feet apart. This left respondents without access to the highway over their established driveway, and cut off their control of their water supply. We are satisfied that this was done out of pure "cussedness."

Finding No. 8 stated in part:

"Plaintiff alleged and claimed a breach of condition number 7 of the deed, but the evidence fails to sustain this claim. The plaintiff has had the continued use and occupancy of the smaller dwelling referred to in condition number 7 of the deed, and such use and occupancy has not been interfered with in any respect by the defendants. . . . The plaintiff had not prior to the initial hearing in this case designated a specific area which he desired for his own unrestricted use, either of five acres or of some smaller area. Later, however, the plaintiff made an attempt to select a five acre tract, and the location of proper and appropriate boundary lines thereof became a matter of dispute. The court finds that the plaintiff has the right to designate the five acre tract surrounding the buildings he occupies, but that the selection must be made in a reasonable manner.

"The main house on the farm, which is occupied by defendants, is situated on the south side of the east-west county road which bisects the farm. The plaintiff's buildings are situated north across the county road from the defendants' house. For many years the defendants' water supply for their house and barn has come from a spring located on the north side of the county road. Plaintiff's water supply has come from a different spring located to the north of his buildings. The overflow from this spring has been used by defendants' cattle. In the light of these facts the phrase 'land surrounding the same,' as used in paragraph number 7 of the deed means land lying north of the county road. Plaintiff's selection of the land for his own use should be limited to land lying north of the county road. Plaintiff should have the continuing right to use water from the spring to the north of his buildings, though it may be outside the tract selected. Defendants should have the right to water their cattle from the overflow from that spring. Defendants should have the continuing right to use water from the spring lying just to the north of the county road even though it is within the tract selected by plaintiff. With each water right should go the right to maintain the spring and the pipelines therefrom."

A similar provision was made in the decree.

■ The deed itself does not give appellant the absolute right to make the selection. Since the deed did not describe the five acres to be reserved, a reasonable selection would have to be made. See *Ball v. Stokely Foods*, 37 Wn. (2d) 79, 221 P. (2d) 832. We agree with the trial court's finding

that the selection made by appellant was not reasonable. We also agree with the finding that the land south of the road was not land surrounding his premises. Generally, two pieces of land separated by a road are not contiguous. But we cannot agree that it was reasonable or proper to permit appellant to include respondents' spring within the five acres in spite of the restrictions placed upon him. Appellant "is to have the unrestricted use of said building and land without any interference from the Grantees." The spring had been used by respondents since they moved onto the property in January, 1943, which was prior to the execution of the deed. Condition No. 7 must be interpreted to have been made with that fact in mind. In addition to limiting the selection of five acres to land north of the road, it must not include the spring in question, nor must the selection be such that it will interfere with respondents' maintenance of the spring or the pipe lines therefrom.

That portion of the decree dismissing the action for rescission and cancellation of the deed is affirmed. Condition No. 6 shall be construed in accordance with our interpretation thereof.

That portion of the decree concerning the selection of a five-acre tract in connection with condition No. 7 is modified and remanded with direction to enter a decree in accordance with the views expressed herein. Neither party shall recover costs on this appeal.

HAMLEY, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.