651 P.2d 850

Kenneth A. VINALL, D.D.S., P.C., an Arizona corporation, Plaintiff/Appellant,

v.

Jon A. HOFFMAN and Charlotte Hoffman, husband and wife, Defendants/Appellees.

No. 15951–PR.

Supreme Court of Arizona, In Banc.

Sept. 7, 1982.

Eaton, Lazarus & Rogers, Ltd. by Alfred J. Rogers, Phoenix, for plaintiff/appellant.

Davis, Siegel & Gugino by Robert L. Gugino, Tucson, for defendants/appellees.

GORDON, Vice Chief Justice:

We accepted review of this appeal to answer the question whether a professional corporation is required to purchase the interest of a shareholder when he or she resigns from practicing with the corporation. Specifically we must decide whether the Legislature intended for the word "resignation" in A.R.S. § 10–909(D) to mean resignation from a professional corporation or resignation from a profession altogether.

In 1975 Jon Hoffman, a dentist, joined Kenneth A. Vinall, D.D.S., P.C., a professional dental corporation, as an employee, stockholder, officer, and director. In 1978 the stockholders entered into a "Stock Restriction and Purchase Agreement." The

agreement gave the corporation the option of buying back a resigning stockholder's shares but did not require the corporation to do so.

Hoffman resigned as an employee of the corporation in October, 1979 and offered his stock to the corporation pursuant to the stock purchase agreement. The corporation refused to purchase Hoffman's stock. The corporation later sued Hoffman and Hoffman counterclaimed to require the corporation to buy his stock. The trial court dismissed the corporation's claim, it having become moot, and granted summary judgment for Hoffman on the counterclaim. The court based its ruling on A.R.S. § 10–909(D) of the Arizona Professional Corporation Act [The Act] which reads, "Within ninety days following the death, insanity, bankruptcy, retirement, *resignation,* expulsion or other legal disqualification of a shareholder, all of the shares of such shareholder shall be transferred to or acquired by persons qualified to own such shares or by the corporation." (Emphasis added.) The corporation appealed.

In its decision the Court of Appeals noted that the trial court had construed the word "resignation" in § 10–909(D) to mean resignation of a shareholder from the corporation. The Court of Appeals reversed the trial court, holding that the term "resignation" meant resignation from the practice of the profession.

We accepted the petition for review and have jurisdiction under Ariz.Const.Art. 6, § 5(3) and Ariz.R.Civ.App.P. 23. The decision of the Court of Appeals is vacated and we affirm the ruling of the trial court.

The Court of Appeals reached its decision deducing that the language "or other legal disqualification" in A.R.S. § 10–909(D) indicated that all of the preceding occurrences enumerated in that paragraph must also be legal disqualifications. The Court looked to A.R.S. § 10–909(C) for a definition of legal disqualification which indicates that to become legally disqualified is to become unable "to render the category of professional service for which the professional corporation was organized." The Court then reasoned that resignation from a corporation was not a legal disqualification but that resignation from a profession was.

We disagree with the Court of Appeals' conclusion. We believe that A.R.S. § 10–909(C) describes when a professional corporation is required to terminate the employment of an individual, that is, when he or she becomes legally disqualified to practice the profession. A.R.S. § 10–909(D) then requires that in the event of some occurrences (retirement, bankruptcy, etc.) which may *permit* the corporation or employee to terminate the employment, or in the event a professional is no longer able to "render the category of professional service," which *requires* the corporation to terminate the employment, the corporation shall acquire the professional's shares.[1]

The Court of Appeals' opinion states, "Unless the Act has created something less similar to a corporation than we believe was intended, the position of a corporate shareholder is not one that ordinarily is voluntarily and unilaterally surrendered." 133 Ariz. at 332, 651 P.2d at 860. In response to this statement, we answer that the Act has created not "something less" than a corporation but a hybrid of a corporation and partnership to accommodate the special needs of the professional who chooses to associate and practice his or her profession. Evidence of this is that shareholders in professional corporations are jointly and severally responsible for liability arising from services rendered.[2] Also the primary reason for creating the profes-

1. We recognize that A.R.S. § 10–909(D) allows the ownership interest of a withdrawing shareholder to be acquired by other persons qualified to own such shares. This phrase is not at issue before the court and we do not address it.

2. A.R.S. § 10–905 provides: *"Professional Relationship and Responsibility*

"Nothing in this chapter shall be construed to alter any law applicable to the relationship between persons furnishing and receiving professional service, including but not limited to liability arising therefrom, and the shareholders of the corporation shall be and remain jointly and severally responsible for such liability."

sional corporation was to permit professionals to take advantage of various federal tax provisions available to a corporation and its employees but not available to self-employed persons or partnerships. B. Friedman, *Professional Corporations for Attorneys* IV (1970). *See generally* G. Ray, *Incorporating the Professional Practice* (1972). Another reason for passing the Act was to insure the continuity of life of the professional corporation. Our reading of the legislature's intent does not jeopardize the continuity of life concept. A.R.S. § 10–908(3) provides that a professional corporation shall not cease to exist unless it is voluntarily or involuntarily dissolved or upon the death of the last surviving shareholder.

■ To construe the statute as the Court of Appeals did would lead to an illogical result. Under the Court of Appeals' reasoning Dr. Hoffman may very well be left with unmarketable shares of uncertain value.[3] This leaves Dr. Hoffman with an ownership interest in a professional corporation where he no longer works, where he no longer is notified of meetings or policy decisions, from which he no longer gets reports, and where he is no longer permitted to vote. Dr. Hoffman might also remain liable for the actions of those still practicing in the corporation. Further, professional corporations rarely, unless they have accumulated large capital surpluses, declare dividends. Instead they dispose of most of the profits as salary. Thus, if the Court of Appeals' reasoning was followed, Dr. Hoffman would own an interest in a professional corporation over which he exercises no control and from which he will likely receive no dividends. Absurdities could result because of this unique position.

Our holding requiring a corporation to redeem the shares of the resigning shareholder is equitable to the corporation. Otherwise, a withdrawing shareholder could refuse to sell his or her shares back to the corporation and possibly subject the remaining shareholders to liability for his or her malpractice or negligence *after leaving the corporation* at a time when the corporation has no supervisory control over the practitioner. See A.R.S. § 10–905.

Ethical considerations require the result we reach today. Principle 1–(I) of the *Principles of Ethics and Code of Professional Conduct* of the American Dental Association provides that "Dentists shall not accept or tender 'rebates' or 'split fees.'" See A.R.S. §§ 32–1297.07(A)(1) and 32–1201(10)(n). In Arizona a professional corporation cannot do what the person licensed to practice cannot do. A.R.S. § 10–909(A). Although the Washington Court of Appeals did not have to reach this precise issue it offered guidance when it stated, "Ethical considerations may require, when one member of a service corporation voluntarily leaves that service corporation, that he [or she] be compensated at a fair value." *Melby v. O'Melia*, 93 Wis.2d 51, 55, 286 N.W.2d 373, 375 (App.1979). If the corporation paid a dividend to Dr. Hoffman when he did not work there it could be subject to sanctions for splitting a fee for work not performed.

The Court of Appeals noted that "[i]n ordinary usage, 'resignation' refers to a voluntary, unilateral surrender of an office or position." 133 Ariz. at 332, 651 P.2d at 860. In applying the rule of common sense meaning in interpreting words we believe the term "resignation" was intended to mean resignation from a professional corporation and not from a profession.

We conclude that it was the legislative intent to provide for the orderly liquidation of withdrawing shareholders from professional corporations and that the term resignation as used in A.R.S. § 10–909(D) means resignation from a professional corporation.

We vacate the opinion of the Court of Appeals and affirm the judgment of the trial court.

HOLOHAN, C. J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

**3.** We do not and cannot on the record before us determine what the actual value of Dr. Hoffman's shares are. The valuation of Dr. Hoffman's interest is a question of fact and is not for us to decide.