[No. 4631-1-III. Division Three. February 15, 1983.]

BUFORD E. GOERES, ET AL, *Appellants*, v. HAROLD ORTQUIST, ET AL, *Respondents*.

*Wayne Murray* and *Murray, Dunham & Murray*, for appellants.

*Robert Southwell* and *Malott, Southwell & O'Rourke*, for respondents.

20

GREEN, J.—James Stewart, Buford Goeres, Harold Ortquist, John Fullerton, and their wives owned land near Chewelah. Horseshoe Lake was located on the property. There was a dam and spillway at one end of the lake. On May 18, 1974, the dam gave way, flooding downstream property. The downstream property owners brought an action against the owners of the lake for damages. While the action was pending, the downstream property owners settled with Fullerton and Ortquist for $5,000 each and covenanted not to execute against them. The court granted a motion for summary judgment against the owners of the lake on the issue of liability. Pending trial on damages, Stewart and Goeres settled the matter for $750,000 and the action was dismissed.

Stewart and Goeres then brought this action against Ortquist and Fullerton[1] for contribution alleging the property was purchased as a joint venture. After trial, the court found the evidence did not support a joint venture; rather, the parties were merely co–owners of the same property and there was no agreement between them, either actual or implied, for any contribution or indemnity. Judgment was entered for Ortquist and Fullerton.

Only Mr. Goeres appeals. He assigns error to the court's findings, contending there is sufficient undisputed evidence to support the existence of a joint venture as a matter of law.[2] We disagree.

■ Co–ownership alone does not establish a joint ven-

[1]Goeres also joined Stewart as a defendant, and counterclaims were filed between the parties *inter se*. These claims are not involved in this appeal.

[2]Mr. Goeres relies on cases from other jurisdictions to support his argument. Those cases are factually distinguishable. None of them involve an action for contribution arising from the commission of a tort. In several cases the parties *admitted* they *agreed* to engage in a specific ongoing enterprise and the only question was whether the agreement was enforceable—here the court, based on the evidence, failed to find such an agreement. Finally, some of the cited cases only involve the question of whether the evidence was sufficient to establish a prima facie claim—here, there was a trial and our review is limited to determining whether substantial evidence supports the court's findings.

ture. There must be proof that the parties contracted to carry out a single enterprise, and they must have a common purpose and community of interest in that enterprise as well as equal rights of control. *Carboneau v. Peterson,* 1 Wn.2d 347, 374, 95 P.2d 1043 (1939); *Refrigeration Eng'g Co. v. McKay,* 4 Wn. App. 963, 973, 486 P.2d 304 (1971); *see* Annot., 138 A.L.R. 968, 972, 976 (1942). In *Lampe v. Tyrell,* 200 Wash. 589, 604–06, 94 P.2d 193 (1939), the court stated:

> [B]efore [a joint venture] can be established, it must appear from the testimony that there was an agreement between the parties to enter into an undertaking, in the objects or purposes of which the parties to the agreement have a community of interest.
>
> . . . We cannot believe that this status can be established by mere loose statements, with no thought of any contractual obligation, or that it can be formed by the mere purchasing of some item, such as gas or oil, there having been no previous agreement or understanding so to do. Neither do we believe that a common purpose is sufficient in itself to form this relationship, there having been no previous agreement to carry out the common purpose. . . .
>
> . . . [T]o have an equal voice . . . each is engaged in the performance of the plans which *all have agreed upon, and which are as personal to one as to the other.*

(Some italics ours.)

In *Carboneau v. Peterson, supra* at 374–75, the court further explained:

> The *sine qua non* of the relationship is a contract, whether it be express or implied. As a legal concept, a joint adventure is not a status created or imposed by law, but is a relationship voluntarily assumed and arising wholly *ex contractu.* The essence of a contract is that it binds the parties who enter into it and, when made, obligates them to perform it, and failure of any of them to perform constitutes, in law, a breach of contract. A mere agreement, or concord of minds, to accompany one another upon an excursion, but without an intent to enter into mutually binding obligations, is not sufficient to create the relationship of joint adventure.
>
> The purpose of the enterprise, whether it be for busi-

ness, pleasure, or for some other objective, must be common to both, or all, parties, and not separate, distinct, and independent.

Where no express agreement exists, whether the parties have entered into a joint venture is a question of fact. No one fact is conclusive. *See Latham v. Hennessey*, 13 Wn. App. 518, 521–22, 535 P.2d 838 (1975).

Here, the court's findings lead to the conclusion that the parties never contracted to engage in an enterprise in which they had a common objective: no money was put aside to invest in the property; the parties did not all decide at the same time to purchase the property; they independently decided whether to purchase liability insurance; and they could sell their portion without approval from the others. The court also found there was no agreement to delegate responsibility for management of the property; rather, the various responsibilities fell upon certain members as a matter of convenience. With regard to the sharing of profits and losses, the court found:

> The nature of this transaction was such that the anticipated profit was in the appreciation of the property and the losses contemplated were simply the maintenance expenses. It was not otherwise a business transaction, and the right and obligation of sharing these "profits and losses" flows just as directly from the common ownership of the property as from any agreement to participate in the joint adventure.

Further, the evidence shows although the parties considered several options for using the property, their individual objectives were different, changing from time to time, and no joint decision was ever made concerning its use. It is evident from the record that no advance agreement was made on how to handle problems concerning the property. Each time a matter required a decision, it was handled on an *ad hoc* basis.

The evidence amply supports the court's findings and they support the conclusions of law. Therefore, the judgment will not be disturbed. *Ocean View Land, Inc. v. Wineberg*, 65 Wn.2d 952, 400 P.2d 319 (1965) (per curiam);

*In re Estate of Thornton,* 14 Wn. App. 397, 401–02, 541 P.2d 1243 (1975).

Since we affirm on this issue, we do not reach the question of whether Stewart and Goeres would be entitled to contribution if the court had found a joint venture existed.[3] Affirmed.

ROE, C.J., and MCINTURFF, J., concur.

Reconsideration denied March 10, 1983.

Review denied by Supreme Court May 24, 1983.

---

[3]We note the parties agree this case was tried prior to the change in Washington law allowing contribution between joint tortfeasors. RCW 4.22.040.