[No. 35948-1-II.    Division Two.    September 18, 2007.]

JOEL C. McCORMICK III, *Appellant,* v. DUNN & BLACK, PS,
ET AL., *Respondents.*

876

James M. Kalamon (of *Paine Hamblen Coffin Brooke & Miller, LLP*) and *Devra S. Hermosilla* (of *Bullard Smith Jernstedt Wilson*), for appellant.

*Thomas D. Adams* (of *Karr Tuttle Campbell*); and *Pamela H. Salgado, Jerret E. Sale*, and *Deborah L. Carstens* (of *Bullivant Houser Bailey, PC*), for respondents.

¶1 PENOYAR, J. — Joel McCormick III appeals the trial court's grant of summary judgment dismissing his claims. In 1992, McCormick, Robert Dunn, and John Black formed a corporation. Each made a $5,000 cash contribution to the corporation that was repaid to them in 1994. Each of the parties received 100 shares of stock. Following McCormick's employment termination, he sought to have his shares redeemed. McCormick sued, claiming that the corporation was actually a partnership, the majority shareholders breached their fiduciary duties, and the corporation should be judicially dissolved for oppression. Dunn and Black filed summary judgment motions seeking dismissal of these

claims, which the trial court granted. McCormick appeals the trial court's dismissal of his claims for (1) dissolution of partnership, (2) breach of fiduciary duty, and (3) dissolution of the corporation. He also appeals the trial court's denial of his summary judgment motion regarding the employment agreement. We affirm.

## FACTS

¶2 Black, McCormick, and Dunn met in December 1992 to discuss forming a law firm. The law firm McCormick, Dunn, and Black, PS, incorporated on December 30, 1992, by filing a certificate of incorporation. The articles of incorporation listed Black, Dunn, and McCormick as the incorporators. The three incorporators were also the initial directors. Dunn was the secretary, treasurer, and chairman of the board of directors for the firm. Black was the vice president. McCormick was the president. Each of the incorporators made a $5,000 cash contribution to the corporation.

¶3 The articles state that "[t]he aggregate number of shares of stock that the Corporation is authorized to issue is three hundred (300) at $1.00 par value." 1 Clerk's Papers (CP) at 98. At the first meeting, the directors agreed that 300 shares of stock were to be issued in consideration for the three shareholders' $5,000 cash contribution. McCormick, Dunn, and Black each received 100 shares. No actual stock certificates were issued.

¶4 In 1994, the firm repaid all three shareholders their $5,000 capital contributions. A memorandum dated August 4, 1994, which Dunn signed as secretary, states:

> A meeting of the Board of Directors was held this date. It was decided among Joel C. McCormick, Robert A. Dunn, and John C. Black that bonus checks in the amount of $5000.00 each are to be issued to each of the three partners of McCormick, Dunn & Black.

2 CP at 238. On May 28, 1993, the three directors unanimously agreed that the firm would provide $300,000 worth of life insurance for the benefit of each principal attorney in the firm, "the proceeds at death to serve specifically for the purpose of eliminating any buy-out obligation of the firm or its surviving shareholders in the event that one of the attorney principals should die." 2 CP at 284-85. They eventually discontinued the life insurance.

¶5 Black and Dunn both signed employment agreements. Whether McCormick signed an employment agreement is in dispute. McCormick asserts that he cannot recall whether he had ever seen or signed an employment agreement for himself and cannot find a written employment agreement in his personal records. In his deposition, Dunn stated that he saw McCormick's employment agreement before turning it over to McCormick for copying. McCormick signed as a witness to Black and Dunn's employment agreements. The employment agreement states:

> This agreement may be terminated by either party upon thirty days written notice to the other. Termination by the corporation requires a two-thirds vote of corporate shareholders. The terminating attorney shall be entitled to payment of the amount of his initial stock contribution to the firm, said amount being payable over a three year period in equal monthly installments. The terminating attorney shall not be entitled to any other amounts, unless agreed to by the remaining principals.

5 CP at 820. McCormick drafted the employment agreement. According to Black and Dunn, McCormick also drafted the articles and the bylaws.

¶6 McCormick introduced members of the Herrig, Vogt, and Stoll law firm to clients McCormick, Dunn, and Black, PS, represented. Dunn and Black felt that McCormick was unable to get along with staff members, mismanaged files, allowed uncollectible accounts to accrue, performed substandard work, refused to work on certain cases, and did not provide work for associates. They terminated McCormick as a firm employee on October 28, 2002. McCormick's em-

ployment was terminable upon 30 days written notice.[1] Dunn and Black testified that they removed McCormick as a director at an October 10, 2002 meeting. McCormick contends that he is still a director, absent written proof to the contrary.

¶7 The articles state that "[i]f any Director, officer, shareholder, agent or employee of the Corporation becomes legally disqualified to render services as an attorney within the State of Washington, he shall forthwith sever all employment with and financial interest in the Corporation." 1 CP at 99. The bylaws the firm adopted state:

> The number of Directors of the Corporation shall initially be three (3). Each Director shall hold office until his death, resignation, retirement, removal, disqualification or his successor is elected and qualifies. Directors shall be shareholders of this Corporation and legally qualified to render services as lawyers in the State of Washington.

1 CP at 103. The bylaws go on to say:

> Directors may be removed from office with or without cause by a vote of shareholders holding a majority of the shares entitled to vote at an election of Directors. However, unless the entire Board is removed, an individual Director may not be removed, if the number of shares voting against the removal would be sufficient to elect a Director, if such shares were voted cumulatively at an annual election. If any Directors are so removed, new Directors may be elected at the same meeting.

1 CP at 104. The firm adopted the bylaws at the first board of director's meeting.

¶8 The firm conducted business as a corporation. The board of directors held regular meetings. The firm filed corporate income tax returns with the Internal Revenue Service. As a corporation, the firm had bank accounts, insurance, a lease, and loans. The firm filed annual reports as a corporation with the secretary of state for Washington.

---

[1] Although McCormick disputes the existence of an employment contract, he does not dispute that his employment was terminable upon 30 days written notice.

When referring to each other, the directors sometimes called each other principals and sometimes partners. The firm, currently known as Dunn and Black, PS, remains incorporated in Washington. The articles stated that the corporation's existence would be perpetual.

¶9 On April 15, 2003, McCormick sued Dunn and Black, PS, asserting claims for (1) dissolution of partnership, (2) breach of fiduciary duty, (3) dissolution of corporation, (4) violation of the Employee Retirement Income Security Act of 1974 (ERISA),[2] and (5) wrongful deprivation of wages.[3] Dunn and Black filed a motion for summary judgment on McCormick's partnership claim. McCormick filed a cross-motion for summary judgment on the partnership issue. The trial court granted Dunn and Black's summary judgment motion and denied McCormick's motion. The trial court found that, as a matter of law, the corporation had not dissolved. It found that McCormick, Dunn, and Black did not form a partnership. The trial court found that at the very outset the three promoters wanted a corporation, not a partnership. The trial court dismissed McCormick's dissolution of partnership claim.

¶10 Dunn and Black filed a motion seeking dismissal of McCormick's claims for corporate dissolution, breach of fiduciary duty, and wrongful withholding of wages. McCormick filed a motion seeking a declaration that the employment agreement did not preclude his claim that he was entitled to a buyout. The trial court granted the summary judgment motions, except McCormick's motion regarding the employment agreement.[4] McCormick obtained a CR 54(b) order from the trial court with respect to

---

[2] 29 U.S.C. § 1140.

[3] Dunn and Black filed counterclaims, alleging (1) fraudulent misrepresentation, (2) negligent misrepresentation, (3) breach of contract, (4) breach of good faith and fair dealing, (5) promissory estoppel, (6) breach of fiduciary duty, and (7) declaratory judgment. The trial court granted McCormick's summary judgment motion dismissing the counterclaims. Because Dunn and Black did not appeal this ruling, we are not reviewing the counterclaims.

[4] The ERISA claim remains set for trial.

the court's summary judgment orders, and this appeal followed.

## ANALYSIS

### I. DISSOLUTION OF PARTNERSHIP

■ ¶11 We review a grant of summary judgment de novo, applying the same standard as the trial court. *City of Seattle v. Mighty Movers, Inc.*, 152 Wn.2d 343, 348, 96 P.3d 979 (2004). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A court should grant the summary judgment motion only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson*, 98 Wn.2d at 437.

¶12 McCormick argues that the parties created a de facto partnership. While conceding that the firm was incorporated, McCormick argues that "incorporation does not defeat the existence of a partnership." Appellant's Br. at 18. Relying on *Stipcich*,[5] McCormick asserts that an entity may be a partnership based on the parties' intent and conduct even though it is incorporated.

¶13 McCormick asserts that the parties formed a partnership at their initial meeting in December 1992 when they decided to enter into business together. McCormick points to the equal capital contribution and their oral agreement to share profits and losses equally as evidence of an intention to form a partnership. McCormick asserts that the firm neglected corporate requirements, including not: (1) issuing stock certificates, (2) providing notice for meetings, and (3) holding meetings. McCormick argues that

---

[5] *Stipcich v. Marinovich*, 13 Wn.2d 155, 124 P.2d 215 (1942).

because a partnership has a statutory obligation under RCW 25.05.300(1) to dissolve and wind up its affairs upon dissociation, the firm must be dissolved.

¶14 McCormick's reliance on *Stipcich* is misplaced. In *Stipcich*, the court found that the parties intended to form a partnership when they entered into a contract for a business relationship. *Stipcich*, 13 Wn.2d 155. The contract did not specify the nature of the business relationship. *Stipcich*, 13 Wn.2d at 162. One of the parties owned a corporation, which was mentioned in the contract. *Stipcich*, 13 Wn.2d at 156. However, the court did not find that the corporation was actually a partnership. Rather, the court found that the corporation was distinct from a separate partnership between the parties. *Stipcich*, 13 Wn.2d at 161. In the other cases McCormick cited, the courts found a partnership where there was no written or express agreement between the parties. *See Malnar v. Carlson*, 128 Wn.2d 521, 910 P.2d 455 (1996); *Goeres v. Ortquist*, 34 Wn. App. 19, 658 P.2d 1277 (1983). In neither of these two cases was the business incorporated.

¶15 Under the Washington Revised Uniform Partnership Act (RUPA), chapter 25.05 RCW, "[a]n association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this chapter." RCW 25.05.055(2). A "corporation" is an association formed under a statute other then the RUPA. *See* Washington Business Corporation Act, Title 23B RCW. A corporation begins to exist the day it files the articles of incorporation. RCW 23B.02-.030(1). McCormick does not cite to, nor could we find, any case law that an incorporated business can actually be a partnership based on the parties' conduct. " 'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.' " *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). In light of RCW 25.05.055(2), McCormick's partnership argument is not persuasive.

¶16 McCormick argues that the parties formed a partnership before they incorporated the firm. The trial court found that at the very outset, the three promoters wanted a corporation, not a partnership. The record indicates that the parties met in December 1992 to form a business. On December 30, 1992, they filed a certificate of incorporation for the firm. The written documents in the record clearly show that McCormick and the other parties intended to form a corporation and not a partnership.

¶17 McCormick argues that because the parties agreed to share their profits and losses equally, they intended to form a partnership. How the parties shared their losses and profits is irrelevant to whether a corporation was formed. In closely held corporations, shareholders sometimes agree to share profits and losses equally. *See Croy Constr. Co. v. Whatcom-Skagit Crane Serv.*, 3 Wn. App. 222, 223, 473 P.2d 438 (1970). This does not change a corporation into another business form. Under RCW 25.05.055(2), an incorporated business cannot be a partnership. The evidence in the record does not support McCormick's claim that the parties initially formed a partnership. McCormick is not entitled to partnership dissolution. Thus, Dunn and Black are entitled to summary judgment on McCormick's partnership claims as a matter of law. We affirm the trial court's dismissal of McCormick's partnership claim.

### Stock Redemption and Corporate Dissolution

¶18 McCormick argues that when the shareholders had their $5,000 capital contribution repaid, it also redeemed all of the outstanding corporate stock. Relying on RCW 23B.06.030, McCormick asserts that a corporation cannot exist without outstanding stock. He argues that once stock is redeemed, the corporation ceases to exist. According to McCormick, once the stock was redeemed, the corporation ceased to exist and became a de facto partnership.

¶19 Dunn and Black counter that there was no stock redemption. They assert that the firm reimbursed the incorporators for their initial cash contributions without redeeming the outstanding shares. Dunn and Black argue that the reimbursement could not have redeemed the stock because it did not comply with the statutory requirements of RCW 23B.06.030(3) for share redemption. They argue that RCW 23B.06.030(4) prohibits corporations from redeeming all of its shares.

¶20 RCW 23B.06.030 provides:

(1) A corporation may issue the number of shares of each class or series authorized by the articles of incorporation. *Shares that are issued are outstanding shares until they are reacquired, redeemed, converted, or canceled.*

(2) The reacquisition, redemption, or conversion of outstanding shares is subject to the limitations of subsection (4) of this section and to RCW 23B.06.400.

(3) *Redeemable shares are deemed to have been redeemed and not entitled to vote after notice of redemption is delivered to the holders in compliance with RCW 23B.01.410* and a sum sufficient to redeem the shares has been deposited with a bank, trust company, or other financial institution under an irrevocable obligation to pay the holders the redemption price on surrender of the shares.

(4) At all times that shares of the corporation are outstanding, one or more shares that together have unlimited voting rights and one or more shares that together are entitled to receive the net assets of the corporation upon dissolution *must be outstanding*.

(Emphasis added.) There is evidence that the firm's stock was issued in consideration for the three shareholders' $5,000 cash contributions. On August 4, 1994, the directors issued $5,000 "bonus checks" to each of the parties. 2 CP at 238. The memorandum and notes from this meeting do not indicate that this money was to redeem the outstanding shares. The record is unclear whether the parties intended this money to be repayment for the initial cash contribution. Dunn and Black are correct that the $5,000 payments

did not redeem the shares, because the bonus checks did not comply with RCW 23B.06.030(3). No notice of redemption was made or delivered to the shareholders in compliance with RCW 23B.01.410. Under RCW 23B.06.030(4), the firm did not redeem its shares because it did not comply with the procedural requirements. Shares remain outstanding until they are reacquired, redeemed, converted, or canceled. RCW 23B.06.030(1). Additionally, RCW 23B.06.030(4) does not allow all shares to be redeemed.

¶21 Chapter 23B.14 RCW specifically sets forth the circumstances under which a corporation may be dissolved.[6] RCW 23B.06.030(4) provides that shares must remain outstanding but does not specify the outcome when this mandate is broken. McCormick does not cite to, nor could we find, any cases holding that corporations cease to exist if all stock is redeemed. As previously noted, " '[w]here no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.' " *Logan*, 102 Wn. App. at 911 n.1 (quoting *DeHeer*, 60 Wn.2d at 126). Because the shares were never redeemed, we affirm the trial court's finding that, as a matter of law, the corporation had not dissolved.

II.  DISSOLUTION OF CORPORATION FOR OPPRESSION

¶22 Judicial dissolution is at the trial court's discretion. *Scott v. Trans-Sys., Inc.*, 148 Wn.2d 701, 707, 64 P.3d 1 (2003) (citing *Bergman v. Johnson*, 66 Wn.2d 858, 863, 405 P.2d 715 (1965)). Under RCW 23B.14.300(2)(b), the superior courts may dissolve a corporation in a proceeding by a shareholder if it is established that "[t]he directors or those in control of the corporation have acted, are

---

[6] *See* RCW 23B.14.010 (dissolution by initial directors, incorporators, or board of directors); RCW 23B.14.020 (dissolution by board of directors and shareholders); RCW 23B.14.200 (administrative dissolution); RCW 23B.14.300 (judicial dissolution).

acting, or will act in a manner that is illegal, oppressive, or fraudulent."[7]

¶23 In deciding whether to grant dissolution, the trial court should consider whether that solution will be beneficial or detrimental to all shareholders or injurious to the public. *Scott*, 148 Wn.2d at 708 (citing *Henry George & Sons, Inc. v. Cooper-George, Inc.*, 95 Wn.2d 944, 953, 632 P.2d 512 (1981)). " '[T]he remedy of liquidation is so drastic that it must be invoked with extreme caution.' " *Scott*, 148 Wn.2d at 708-09 (alteration in original) (quoting *Polikoff v. Dole & Clark Bldg. Corp.*, 37 Ill. App. 2d 29, 36, 184 N.E.2d 792 (1962)).

¶24 Once overreaching conduct has been demonstrated, the burden shifts to the majority shareholders to show there were legitimate business justifications for the conduct. *Scott*, 148 Wn.2d at 709. Under the business judgment rule, corporate management is immunized from liability in a corporate transaction where (1) the decision to undertake the transaction is within the power of the corporation and the authority of management and (2) there is a reasonable basis to indicate that the transaction was made in good faith. *Scott*, 148 Wn.2d at 709 (citing *Nursing Home Bldg. Corp. v. DeHart*, 13 Wn. App. 489, 498, 535 P.2d 137 (1975)). A court must consider a plaintiff's claims for judicial dissolution "against the backdrop of established deference to corporate governance." *Scott*, 148 Wn.2d at 709.

¶25 RCW 23B.14.300 does not define the term "oppressive," nor does the Model Business Corporation Act. Washington courts have adopted two tests for oppressive conduct. *Scott*, 148 Wn.2d at 711. The "reasonable expectations" test defines "oppression" as a violation by the majority of the reasonable expectations of the minority. *Scott*, 148 Wn.2d at 711 (quoting *Robblee v. Robblee*, 68 Wn. App. 69, 76, 841 P.2d 1289 (1992)). " 'Reasonable expectations are those spoken and unspoken understandings on which the founders of a venture rely when commencing the venture.' "

---

[7] This is based on Model Business Corporation Act section 14.30 (1999).

*Scott*, 148 Wn.2d at 711 (internal quotation marks omitted) (quoting *Robblee*, 68 Wn. App. at 76). Where, as here, the complaining shareholder was one of the original participants in the venture by committing capital and resources, the reasonable expectations test is most appropriate. *Scott*, 148 Wn.2d at 711. Under this test, the complaining shareholder has the burden of proof, by a preponderance of the evidence, to establish the requisite jurisdictional facts and the equitable grounds for dissolution. *Scott*, 148 Wn.2d at 712.

¶26 In *Robblee*, the minority shareholder tried to show that the majority shareholder acted oppressively with evidence that the majority shareholder fired the minority shareholder, tried to have him removed as an officer and director, and changed the organization of the corporation in order to take over the minority shareholder's functions. *Robblee*, 68 Wn. App. at 75. The court found that there was no oppression because there were legitimate and reasonable explanations for the conduct the minority shareholder characterized as oppressive. *Robblee*, 68 Wn. App. at 75-77.

A. Director Termination and Shareholder Decisions

¶27 McCormick asserts that Black and Dunn excluded him from corporate decision making. He further argues that Black and Dunn excluded him from shareholder and director meetings after terminating his employment. McCormick asserts that he has not received notice of a single directors meeting since October 2002.

¶28 Black and Dunn counter that they removed McCormick as a director at the October 10, 2002 meeting. They argue that only directors are entitled to manage the firm's affairs and that they did not act oppressively by excluding McCormick from the decision making process. They also assert that there have been no shareholder meetings since McCormick left the firm.

¶29 McCormick argues that Black and Dunn have failed to show that McCormick is no longer a director. He contends

that absent written evidence that he has been removed, he continues to be a director.

¶30 In their depositions, Dunn and Black state that McCormick was removed as a director at the October 10, 2002 meeting. The articles of incorporation allow a director to be removed from office. The bylaws state that a director may be removed from office with or without cause by a majority vote of shareholders. Nothing in the bylaws or articles requires written documentation of removal. Dunn and Black's votes to remove McCormick as a director were sufficient since they held a majority of the shares. McCormick does not argue that the director removal was oppressive. Rather, McCormick challenges whether there was ever a removal. He argues that this is a question of fact that precludes summary judgment.

¶31 However, there must be a *genuine* issue of material fact to preclude summary judgment. CR 56(c). There is no genuine issue about whether McCormick was removed. Viewed in the light most favorable to McCormick, the evidence in the record is that McCormick was removed as a director. McCormick's argument that his director removal was not put in writing does not create a genuine issue of material fact. Neither the articles nor the bylaws required the removal to be in writing.

¶32 McCormick asserts he has not received notice of shareholder meetings. Dunn and Black respond that there have been no shareholder meetings since McCormick left the firm. There is no evidence in the record that Dunn and Black held a shareholder meeting that excluded McCormick after they terminated his employment. It is the minority shareholder's burden to show oppressive conduct before the burden shifts to the majority shareholders to establish legitimate business justifications for the conduct. *Scott*, 148 Wn.2d at 709. Where there is no evidence that McCormick has been excluded from shareholder meetings, McCormick has not established that there has been oppressive conduct. Furthermore, acts are not oppressive where there is a reasonable explanation for them. *Robblee*, 68 Wn. App. at

76-77. Dunn and Black did not oppress McCormick by excluding him from managerial decisions after removing him as a director. The trial court properly granted summary judgment on the judicial corporate dissolution claim.

## B. Shareholder Interest Buyout

¶33 McCormick argues that Dunn and Black's failure to pay him the fair value of his one-third interest in the law firm constitutes an oppressive act. McCormick asserts that he reasonably expected that his interest in the law firm would be redeemed based on (1) the parties' intent to form a new law firm after Winston and Cashatt refused to dilute their stock redemption buyout rights, (2) the articles' reference to a potential stock redemption right agreement, (3) the bylaws' reference to a potential stock redemption agreement, (4) Dunn's stating that he would like a buyout of his stock if he departed, and (5) the life insurance. McCormick argues that genuine issues of material fact exist as to whether his expectations of a stock buyout are reasonable.

¶34 Dunn and Black counter that McCormick could not have reasonably expected he would be entitled to a buyout because of the employment agreement terms. They further argue that the parties did not form the firm with the intent that there would be a stock buyout. They assert that Dunn never stated that he thought he was entitled to a buyout.

¶35 Neither party cites, nor could we find, a Washington case deciding whether a departing law firm member is entitled to a buyout of shares absent an express agreement. However, other jurisdictions have addressed this issue. Under the Florida Professional Service Corporation Act, shares of stock in a professional corporation can be transferred only to a duly licensed member of the profession but are otherwise freely transferable. FLA. STAT. ANN. § 621.09. The Florida statutes do not impose a duty on the corporation to redeem the shares of a terminated corporate employee. *Corlett, Killian, Hardeman, McIntosh & Levi, PA*

*v. Merritt*, 478 So. 2d 828, 829 (Fla. Dist. Ct. App. 1985).[8] Florida courts hold that in a close corporation or a professional service corporation setting, there is no statutory requirement of redemption. *Corlett*, 478 So. 2d at 831 (citing *Werber v. Imperial Golf Club, Inc.*, 413 So. 2d 41 (Fla. Dist. Ct. App. 1982); *Brown v. Fin. Serv. Corp. Int'l*, 489 F.2d 144 (5th Cir. 1974)). Absent a redemption provision in the articles or bylaws, the Florida courts will not write such an agreement for the parties. *Corlett*, 478 So. 2d at 831-32 (citing *Lane, Gelety, Woolsey & Centrone, PA v. Woolsey*, 377 So. 2d 743, 745 (Fla. Dist. Ct. App. 1979), *cert. denied*, 388 So. 2d 1120 (Fla. 1980)).

¶36 Arizona's previous Professional Corporation Act required a professional corporation to redeem shares from a terminated employee. *See Kenneth A. Vinall, DDS, PC v. Hoffman*, 133 Ariz. 322, 651 P.2d 850 (1982). However, the act was repealed in 1995 and the new act specifically deleted the provision requiring professional corporations to redeem shares. *See Fearnow v. Ridenour, Swenson, Cleere & Evans, PC*, 213 Ariz. 24, 31, 138 P.3d 723 (2006) (*Fearnow II*). In Arizona, as long as a lawyer is licensed to practice law, he may have shares in a law firm professional corporation, even when he is no longer employed by the corporation. *Fearnow* II, 213 Ariz. at 31.

¶37 Similar to the Florida and current Arizona statutes, RCW 18.100.100 requires that all shareholders in professional service corporations be licensed. However, nothing in that requirement implies a duty to purchase the shares of an ousted director. Furthermore, courts do not have the power, under the guise of interpretation, to rewrite contracts the parties have deliberately made for themselves. *Clements v. Olsen*, 46 Wn.2d 445, 448, 282 P.2d 266 (1955). Courts may not interfere with the freedom of contract or substitute their judgment for that of the parties to rewrite

---

[8] Some states provide that stock must be redeemed at book value upon employment termination unless there is an alternative provision in the articles of incorporation or bylaws. *See, e.g., Moroze & Sherman, PC v. Moroze*, 104 A.D.2d 70, 481 N.Y.S.2d 699 (1984).

the contract or interfere with the internal affairs of corporate management. *Clements*, 46 Wn.2d at 449-50; *Croy*, 3 Wn. App. at 224.

¶38 McCormick contends that he is entitled to a share buyout because the articles and bylaws contemplate a stock redemption agreement. However, the parties never made a stock redemption agreement. At one point, the firm did have life insurance for the parties. The life insurance agreement was not a stock redemption agreement, and it paid proceeds only in the event of an attorney's death. Additionally, they discontinued the life insurance. The courts do not have the power to make a stock redemption agreement where the parties failed to do so. *See Clements*, 46 Wn.2d at 449-50; *Croy*, 3 Wn. App. at 224. The statute does not provide for stock redemption upon employment termination. *See* RCW 18.100.100. We "cannot, based upon general considerations of abstract justice, make a contract for parties that they did not make themselves." *Wagner v. Wagner*, 95 Wn.2d 94, 104, 621 P.2d 1279 (1980). McCormick is not entitled to a share buyout. Thus, it was not oppressive conduct for Dunn and Black to refuse to buy out McCormick's shares. We affirm the trial court's summary judgment ruling.

C. Remaining Law Firm Shareholder

¶39 McCormick argues that he is entitled to judicial corporate dissolution because he would otherwise retain ownership in a law firm in which he has no business or professional relationship. He argues that, as a shareholder, he has the right to confidential client information under RCW 23B.16.020 that cannot be revealed to those outside the attorney-client relationship. McCormick argues that if he exercised his shareholder rights, he would wreak havoc on the firm.

¶40 It does not appear that Washington courts have addressed the ethical and confidential obligations of an attorney remaining a shareholder of a legal corporation after employment has been terminated. McCormick does

not cite any Washington case law addressing this issue. McCormick argues that an Arizona case requires a corporation to redeem the shares of a terminated employee "to avoid absurd results." Appellant's Br. at 37 (citing *Vinall*, 133 Ariz. at 324). However, *Vinall* relied on the former Arizona Professional Corporation Act, which required a corporation to repurchase the shares of a shareholder departing from a professional corporation. *See Fearnow v. Ridenour, Swenson, Cleere & Evans, PC*, 210 Ariz. 256, 110 P.3d 357 (Ct. App. 2005) (*Fearnow I*), *vacated and remanded on other grounds*, 213 Ariz. 24. That act was repealed, and the new act specifically deleted the provision requiring corporations to redeem shares. *Fearnow* I, 210 Ariz. at 260. *Vinall* is no longer controlling law in Arizona. *Fearnow* I, 210 Ariz. at 260. Currently, Arizona allows lawyers to continue to hold shares in a professional corporation law firm where they are not employed as long as they are licensed to practice law. *Fearnow* II, 213 Ariz. at 31.

¶41 Florida has also addressed the ethical obligations of a shareholder lawyer in a professional corporation. *See Corlett*, 478 So. 2d at 833. In *Corlett*, the Florida District Court of Appeals rejected the lawyer shareholder's argument that share redemption was required because shareholders "would have an ongoing right of access to the corporation's books and records, which arguably could make them privy to certain client confidences." *Corlett*, 478 So. 2d at 834. The court held that "none of the ethical dilemmas or '[a]bsurdities [which] could result because of this unique position' are so compelling as to warrant a court-imposed redemption obligation on the part of the corporation." *Corlett*, 478 So. 2d at 834 (alterations in original) (citation omitted) (quoting *Vinall*, 133 Ariz. at 324).

¶42 The Illinois Appellate Court has also addressed the potential ethical issues when a lawyer leaves a professional corporation. *Trittipo v. O'Brien*, 204 Ill. App. 3d 662, 561 N.E.2d 1201 (1990). The court stated, "We, like the *Corlett* court, recognize that the failure to compel the redemption of his shares may produce harsh results and the potential for

ethical problems. It is our belief, however, that these concerns do not justify unauthorized judicial intervention." *Trittipo*, 204 Ill. App. 3d at 673.

¶43 McCormick may be right that retaining shares to the firm could create ethical and confidential issues. However, this does not justify judicial intervention where the parties failed to execute a stock redemption agreement.

III. BREACH OF FIDUCIARY DUTIES

¶44 McCormick argues that Dunn and Black breached their fiduciary duties to him. McCormick does not cite any Washington case law on corporate fiduciary duties. McCormick asserts that "when majority shareholders abuse their control and attempt to freeze out a minority shareholder," they breach their fiduciary duties. Appellant's Br. at 38. McCormick argues that Dunn and Black breached their fiduciary duty to him when they helped themselves to all of the firm's profits. McCormick argues that Dunn and Black did not give him any of the firm's profits after terminating his employment. Also, he argues that refusing to redeem his shares, using his name with the bank, and not allowing him to participate in business decisions constituted a breach of fiduciary duty.

¶45 We review the summary judgment dismissal of McCormick's claim de novo. *Mighty Movers*, 152 Wn.2d at 348. The elements necessary to establish liability for breach of a fiduciary duty are (1) that a shareholder breached his fiduciary duty to the corporation and (2) that the breach was a proximate cause of the losses sustained. *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 509, 728 P.2d 597 (1986).

¶46 McCormick argues that Dunn and Black owe "a high duty of candor, good faith, trust, confidence, and absolute loyalty" to him. Appellant's Br. at 37. Other states have imposed fiduciary duties of "good faith and utmost loyalty" toward other shareholders in close corporations. *See Zimmerman v. Bogoff*, 402 Mass. 650, 660, 524 N.E.2d 849 (1988). Washington courts have not outlined the scope of

the duty owed by a shareholder to his or her fellow shareholders beyond the common sense prohibition against retaining personal profit owing to the corporation. *See Interlake Porsche*, 45 Wn. App. at 508-09 (unauthorized personal use of corporate funds breached fiduciary duty).

¶47 Dunn and Black argue that they did not violate any fiduciary duty to McCormick for distributing profits as bonuses after terminating McCormick's employment because this was the firm's regular practice throughout its existence. The record indicates and McCormick acknowledges that the firm regularly distributed profits as bonuses to its employees.

¶48 In a similar case, Division One of our court upheld a trial court's decision that the corporation owed the minority shareholder compensation for the period of his employment but not beyond that. *Croy*, 3 Wn. App. at 225. A corporation's directors are its executive representatives charged with its management, and the courts will not interfere with the reasonable and honest exercise of the directors' judgment. *Croy*, 3 Wn. App. at 224. Here, the directors distributed the corporation's profit as bonuses to its current employees, a practice that the firm had throughout its existence. When he was an employee, McCormick regularly received the corporation's profits as bonuses. This distribution of bonuses to current employees is a reasonable and honest exercise of the directors' judgment that the courts should not interfere with. This is not a breach of a fiduciary duty.

¶49 Dunn and Black argue that they did not violate any fiduciary duty to McCormick because he was not entitled to participate in managerial corporate affairs. As noted previously, McCormick contends that there must be written evidence of his director removal. There is nothing within the bylaws or articles that require written evidence of the removal. Dunn and Black's votes to remove McCormick as a director were sufficient since they held a majority of the shares. The evidence in the record is that they removed McCormick as a director. There is no genuine

issue of material fact that would preclude summary judgment. Because McCormick was no longer a director, he was not entitled to participate in the managerial corporate affairs. Dunn and Black did not breach their fiduciary duty to McCormick.

## IV. EMPLOYMENT AGREEMENT

¶50 McCormick filed a motion for summary judgment seeking a declaration that if an employment agreement existed, it did not preclude him from receiving a buyout of his shares. The trial court denied McCormick's motion for partial summary judgment regarding the employment agreement effect.

¶51 McCormick asserts that the "trial court erred when it ruled that, as a matter of law, the alleged written employment agreement precluded McCormick from receiving a buyout of his one-third interest in the law firm where (1) material issues of fact exist regarding whether McCormick was subject to such an agreement, and (2) the terms of the written agreement govern only an employee's employment with the law firm and not ownership interest in the law firm." Appellant's Br. at 39-40.

¶52 The trial court properly dismissed McCormick's claims for (1) dissolution of partnership, (2) breach of fiduciary duty, and (3) dissolution of corporation. McCormick does not have a claim where he is entitled to the buyout of his shares. Thus, whether the employment agreement precludes a buyout is moot. We affirm.

HOUGHTON, C.J., and QUINN-BRINTNALL, J., concur.

Review denied at 163 Wn.2d 1042 (2008).